*Terry, et al. v. Maricopa County Community College District, et al.*

**Index of Exhibits to Notice of Removal**

| Ex. No. | Description |
|---------|-------------|
| 1. | Complaint [10/7/2019] |
| 2. | Demand for Jury Trial [10/7/2019] |
| 3. | Certificate of Compulsory Arbitration [10/7/2019] |
| 4. | Notice of Lawsuit and Request for Waiver of Service of Summons [10/14/2019] |
| 5. | Waiver of Service  [11/8/2019] |

# Exhibit 1

Exhibit 1

**COPY**

OCT - 7 2019

(COURT SEAL)

CLERK OF THE SUPERIOR COURT
J. WHITE
DEPUTY CLERK

1

**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

2

3   40 North Center Street, Suite 200
4   Mesa, Arizona   85201
    Telephone No.:      (480) 464-1111
5   Facsimile No.:      (480) 464-5692
    Email:      centraldocket@jacksonwhitelaw.com
6   *Attorneys for Plaintiffs*
    By:   Michael R. Pruitt, SBN 011792
7         Email:      mpruitt@jacksonwhitelaw.com
          Nathaniel J. Hill, SBN 028151
8         Email:      nhill@jacksonwhitelaw.com
          Grant S. Cragun, SBN 034332
9         Email:      gcragun@jacksonwhitelaw.com

10   **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11   **IN AND FOR THE COUNTY OF MARICOPA**

12   LeRodrick Terry, Ph.D. and Aisha Terry,
     husband and wife,
13
                                              Case No.:   CV2019-097031
14                  Plaintiffs,
                                              **COMPLAINT**
15   v.
                                              (Breach of Contract; Breach of the Implied
16   Maricopa County Community College        Covenant of Good Faith and Fair Dealing;
     District; Leslie Cooper, as General      Defamation; Violation of 42 U.S.C. § 1981;
17   Counsel of Maricopa County Community     Violation of 42 U.S.C. § 1983; Defamation;
     College District and in her personal     Invasion of Privacy–Public Disclosure of
18   capacity, and John Doe Cooper; Matthew   Private Facts; False Light (False Light
     Hasson, as a Spokesperson for Maricopa   Invasion of Privacy); Intentional Infliction
19   County Community College District and     of Emotional Distress; Retaliation in
     in his personal capacity, and Jane Doe   Violation of Title VII; Loss of Consortium)
20   Hasson; Casey Kuhn, as a Senior Field
     Correspondent and in her personal
21   capacity, and John Doe Kuhn; John and    (*Jury Trial Requested*)
     Jane Does I-X; Black Corporations I-X;
22   White Partnerships I-X; and Red Limited
     Liability Companies I-X,
23
24                  Defendants.

25        Plaintiffs, LeRodrick Terry, Ph.D. and Aisha Terry, by and through their counsel

26   undersigned, and for their Complaint, allege as follows:

27

28

-1-

1      1.    Dr. Terry is, and at all times relevant to this action has been, a resident of Maricopa

2 County, Arizona.  Dr. Terry is married to Aisha Terry, who also has been at all relevant times a

3 resident of Maricopa County, Arizona.

4      2.    Defendant Maricopa County Community College District (the "District" or

5 "MCCCD"), is a community college district organized and operating under the color of state law

6 as a political subdivision of the State of Arizona pursuant to A.R.S. § 15-1401, *et seq.*

7      3.    The District operates ten colleges and numerous satellite locations throughout the

8 greater Phoenix, Arizona metropolitan area from its main office in Tempe, Arizona.  Rio Salado

9 College ("Rio Salado") located in Tempe, Arizona is one of the colleges operated by the District.

10      4.    The District also offers extensive online classes, certifications, and training

11 programs.

12      5.    The District operates under a Governing Board (the "Board") of publicly elected

13 members.

14      6.    The chief executive officer of the District is the Chancellor who reports directly to

15 the Governing Board of the District.

16      7.    The office of the General Counsel provides legal services to the District and all of

17 its encompassing colleges.

18      8.    At all times relevant to this action, the position of General Counsel has been held

19 by Defendant Leslie Cooper.

20      9.    Leslie Cooper, as General Counsel, is an employee of the District.

21      10.    At all relevant times, on information and belief, Defendant Leslie Cooper was a

22 resident of Maricopa County, Arizona.

23      11.    Upon information and belief, Defendant Leslie Cooper is married.  The actions

24 alleged in this Complaint against Defendant Leslie Cooper were performed on behalf of and for

25 the benefit of the marital community of Leslie and John Doe Cooper rendering their marital

26 community liable for those actions.

27      12.    The Public Relations Marketing Director is as an official representative of the

28 District who serves as a spokesperson and representative to the media.

13.    Matthew Hasson is an employee of the District serving as the Public Relations Marketing Director.

14.    Upon information and belief, Defendant Matthew Hasson is married.  The actions alleged in this Complaint against Defendant Matthew Hasson were performed on behalf of and for the benefit of the marital community of Matthew and Jane Doe Hasson rendering their marital community liable for those actions.

15.    KJZZ is a National Public Radio member station broadcasting to the Phoenix, Arizona metropolitan area.  KJZZ reports local, national, and worldwide news on its radio station and its website, https://kjzz.org.

16.    KJZZ is owned and operated by Rio Salado and operates on its' campus in Tempe, Arizona.  KJZZ is licensed to the District.

17.    Casey Kuhn is an employee of KJZZ working as a Senior Field Correspondent. Ms. Kuhn reports on both KJZZ's radio station and its website.

18.    Upon information and belief, Defendant Casey Kuhn is married.  The actions alleged in this Complaint against Defendant Casey Kuhn were performed on behalf of and for the benefit of the marital community of Casey and John Doe Kuhn rendering their marital community liable for those actions.

19.    Except as otherwise noted herein, at all times material hereto, the District was acting through its agents and employees, and is therefore liable for the actions of those agents and employees under the doctrine of respondeat superior.

20.    John and Jane Does I-X, Black Corporations I-X, White Partnerships I-X, and Red Limited Liability Companies I-X are fictitious individuals or entities who may be liable to Plaintiffs for all or part of their damages.  At this time, the true names of these individuals or entities are not known, but leave of court will be sought to add their true names at such time as they are discovered.

21.    The events giving rise to these causes of action occurred in Maricopa County, Arizona within the jurisdiction of this court.

22.     A notice of claim outlining the state law claims of Plaintiffs and a specific settlement amount was timely served on the District and individual Defendants. The time for the District to respond has expired.

23.     On April 29, 2019, the parties entered into a Tolling Agreement that was effective on April 12, 2019 tolling the statute of limitations on all claims and extending the period for Plaintiffs to file the lawsuit. A true and accurate copy of the Tolling Agreement is attached to the Complaint as Exhibit "A."

24.     This court has subject matter jurisdiction over Plaintiffs' claims.

## BACKGROUND FACTS

**I.     Dr. Terry's background and work history with the District.**

25.     Dr. Terry is an African-American male.

26.     Dr. Terry received a Ph.D. and M.Ed. in Higher Education Administration from Auburn University. He also holds an M.A. in Leadership from Shorter University in Georgia and a B.A. degree in History from Kent State University. Dr. Terry is also a graduate of the Emerging Leaders Institute, the NCSD Walter Bumphus Leadership Institute, and the League of Innovation for Community Colleges Executive Leadership Institute.

27.     Dr. Terry was hired by the District as Vice President of Student Affairs for Rio Salado with an effective starting date of July 1, 2015. The District announced Dr. Terry's acceptance of the position on July 8, 2015 through an Internet and Facebook posting entitled Rio News.

28.     In addition to Dr. Terry's employment with the District, he also held a paid faculty position with Grand Canyon University where he taught graduate degree courses for the College of Doctoral Studies, was a paid motivational speaker listed with AEI Speakers Bureau, was on several boards, and volunteered in the community.

29.     Upon Dr. Terry's hire with the District, he implemented a reorganization in his division changing the old hierarchical organization to a more horizontal reporting structure. This resulted in five positions including two deans, two assistant deans, and one director reporting directly to Dr. Terry instead of only two deans reporting to him under the old structure. Dr. Terry

also realigned the responsibilities of several staff members during his reorganization and informed his staff that he expected a new level of accountability with an emphasis on results and not preservation of the status quo.

30.     Two longtime deans, Kevin Bilder and Rachelle Clarke, were not pleased with Dr. Terry's changes in structure and responsibilities.

## II.   Relevant Provisions of the District's Staff Policy Manual, MAT Staff Policy Manual, Administrative Regulations, and HR Policies

31.     Dr. Terry's employment relationship with the District was covered by the terms and conditions, detailed policies and procedures, and the expressly stated "due process" rights found in the District's Staff Policy Manual (the "Staff Manual").

32.     As a Vice President, Dr. Terry was also a member of the District's Management, Administration & Technology ("MAT") employee group.  As a MAT employee, the employment of Dr. Terry was also subject to the additional terms and conditions, detailed policies and procedures, and expressly stated "due process" rights found in the MAT Staff Policy Manual (the "MAT Policy Manual").  Prior to May 22, 2018, the MAT Policy Manual was an appendix to the Staff Manual.  On or about May 22, 2018, the MAT Policy Manual was removed from the Staff Manual and transformed into a standalone document.

33.     The District also adopted an extensive set of Administrative Regulations that includes section 5.1 covering Equal Employment Opportunity ("EEO") and sexual harassment. The Staff Manual and MAT Policy Manual both specifically invoke and incorporate the provisions in the Administrative Regulations that deal with sexual harassment complaints and promise "due process" rights for anyone accused of sexual harassment.

34.     The Staff Manual, MAT Policy Manual, and Administrative Regulation 5.1 formed a valid and enforceable employment contract between the District and Dr. Terry pursuant to A.R.S. § 23-1501(A)(2), together with other state and common law, by stating the following:

- A non-probationary MAT employee, such as Dr. Terry, is by definition a "Classified Employee" holding a "Classified Position" meaning the employee "may only be disciplined for just cause and has the right to appeal certain disciplinary actions in accordance with the employee's group manual."  In contrast, "Non-Classified" employees, such as adjunct faculty, athletic coaches and members of the Chancellor's Executive Committee, and only these

categories of employees, are informed they are "at-will" employees. **Staff Manual Policy A-20 and A-29.**

- The Staff Manual states that it contains the employee policies of the District that apply to all appointed, classified and non-classified employees. District employees are subject to the policies in the manual. **Staff Manual Policy A-1.**

- The Staff Manual is made available online to the employees of the District and contains policies that apply to all classified employees. *Employees are responsible for familiarizing themselves and complying with these policies* and all changes and amendments to these policies. [Emphasis added.] **Staff Manual Policy A-1.**

- The Governing Board of the District and its agents have the power to "suspend, discipline, or discharge employees *for proper cause.*" **Staff Manual Policy A-2.** [Emphasis added.]

- Failure to adhere to District policies or Administrative Regulations, whether willful or unintentional, involving employee conduct or job performance constitutes a violation of employment standards. Violation of these standards may result in corrective action. **Staff Manual Policy A-4; Administrative Regulation 6.7.**

- Discrimination and sexual harassment complaints will be investigated according to procedures established by MCCCD. [...] "The formal process involves *the complaining party filing a written complaint with the MCCCD Equal Employment Opportunity/Affirmative Action (EEO/AA) office.* During this formal process, *the MCCCD EEO/AA Office will investigate the allegation,* determine whether the evidence supports the allegation of discrimination, and issue a Report of Findings and make recommendations for the resolution of the complaint." [Emphasis added.] **Staff Manual Policy A-21.**[1]

- *"Due process is afforded any employee accused of illegal discrimination."* On receipt of a complaint, *"an immediate preliminary investigation"* will be conducted to determine if there is reasonable cause to believe the nondiscrimination policy has been violated. "If so, a prompt, *thorough, impartial investigation* will be conducted *by the authorized administrator.* If the final decision is that illegal discrimination occurred, *the college* will take immediate action to stop the illegal discrimination, prevent its recurrence, and address its effects. Remedies for the complainant will also be sought. *Violations of this policy may result in disciplinary action up to and including termination for employees.*" [Emphasis added.] NOTE: The policy differentiates between the investigation and any disciplinary action. **Staff Manual Policy A-21; Administrative Regulation 5.1.8.**

- Retaliation is prohibited against any employee who participates in any manner in any investigation of illegal discrimination or sexual harassment. **Staff Manual Policy A-21; Administrative Regulation 5.1.16.**

---

[1] On May 22, 2018, the District amended Staff Manual Policy A-21 by striking much of the policy and replacing it with the statement: **EFFECTIVE May 22, 2018** – Equal Employment Opportunity (EEO) is a federal law. Protections for employees remain in place under MCCCD Administrative Regulations 5.1 – 5.1.16. [Emphasis in original.]

- The term "Corrective Action" is defined to include the "supervisory techniques of coaching and counseling, Initial Corrective Action, Second Corrective Action and the *formal disciplinary actions of suspension, demotion and dismissal from employment*[.] [Emphasis added.] **Staff Manual Policy A-29.**

- The definition of the term "***Discipline***" is the "supervisory techniques of ***suspension, demotion and dismissal from employment***, which are designed and intended to be used by supervisors in a progressive manner to improve an employee's job performance and/or workplace conduct." [Emphasis added.] **Staff Manual Policy A-29.**

- Appeals of employee discipline are resolved pursuant to the applicable employee group manual and not the grievance procedures of the Staff Manual. **Staff Manual Policy C-2 and C-3.**

- Complaints regarding sexual harassment "are resolved pursuant to Administrative Regulation 5.1[.]" **Staff Manual Policy C-2.**

- "The terms "discipline" and "progressive discipline" refer specifically to the actions of suspension, demotion, and dismissal from employment." **Staff Manual Policy C-4.**

- Classified employees may only be disciplined for "just cause" which is defined as the burden or standard of proof that MCCCD must meet in order to support the discipline of a Board-approved employee. Just cause requires five criteria including a "fair and objective investigation," that "produced sufficient evidence or proof," and action that was "consistent with disciplinary action for similar or comparable conduct or was otherwise reasonable under the circumstances." **Staff Manual Policy C-4.**

- Records of corrective action will be maintained in the employee's personnel file. **Staff Manual Policy C-4.**

- "Upon the recommendation of the Chancellor and approval by the Governing Board, *a MAT employee may be **dismissed for cause**.* The employee shall have access to the following ***due-process procedures***" that include: a written statement of charges formulated by the college president or appropriate vice chancellor of such specificity as to allow the MAT employee to prepare a defense, the right to a hearing governed by mandatory deadlines, and the right to select one of the three hearing committee members. Further due process rights provide that the "employee subject to dismissal may attend the hearing; present any testimony, evidence, or oral and written statements in his/her behalf; cross-examine witnesses; and be represented by Legal Counsel and/or a non-lawyer personal representative." The hearing committee must issue findings of fact and conclusions of law and a formal recommendation to the Chancellor pursuant to mandatory deadlines. The Chancellor must then make a formal recommendation to the Governing Board which will render a final decision regarding retention or dismissal. [Emphasis added.] **MAT Policy Manual section 14.2 Dismissal.**

- The Administrative Regulations are used to manage the day to day operations of the District. **Administrative Regulation Summary.**

- The Administrative Regulations *serve as the doctrine of reference for all staff personnel with regard to MCCCD operations.* The Administrative Regulations are maintained by the Office of Public Stewardship, in consultation with the Chancellor, and under review of legal counsel. [Emphasis added.] **Administrative Regulation Summary.**

- *Records* [related to sexual harassment investigations] *will be maintained in a confidential manner* to the extent permitted by law and insofar as they do not interfere with MCCCD's legal obligation to investigate and resolve issues of sexual harassment. [Emphasis added.] **Administrative Regulation 5.1.13.**

- MCCCD employees who are experiencing discrimination (the "complainant") may use either the *informal* or *formal* discrimination complaint process. **HR Policy – Filing a Complaint.**

Selected portions of the complaint procedure include:

The **informal** process allows a complainant to provide a verbal or written report of an alleged discriminatory act within *90 calendar day* of the act. The administrative official receiving the informal complaint must schedule a meeting with the respondent within *10 working days*. If the respondent admits the behavior he is counseled. If the respondent denies the allegations the complainant is advised of the denial and asked if she wants to file a formal complaint or attempt mediation. *Id.* [Emphasis added.]

The complainant employee may begin the *formal* complaint process by contacting the MCCCD Equal Employment Opportunity/Affirmative Action (EEO/AA) office *within 180 calendar days* of the last occurrence of the alleged discriminatory event[.] ...*The employee must complete and sign the form provided by the MCCCD EEO Office*. The complaint *must* identify the action/decision/conduct that the employee believes is discriminatory on the basis of ... sex[.] ... *The MCCCD EEO Office will investigate the matter*. The EEO Office serves as a neutral, fact-finding party. The EEO office will review its role and the complaint process with both the complainant and person(s) who performed the alleged discriminatory act (the "respondent"). *Id.* [Emphasis added.]

*A summary of the allegations* will be provided to the respondent *"in advance of the initiation of the investigation"* and the respondent will be given the opportunity to provide a written response within seven working days. *Id.* [Emphasis added.]

The MCCCD EEO Office will conduct a fact-finding investigation and issue a letter or findings *within 90 days of the original written complaint.* The College President will accept, reject, or modify the recommendations and provide written notification of his/her action to the parties within fifteen working days of receiving the findings. If either party is dissatisfied with the findings, they may submit a request for an administrative review. If the findings allege sufficient evidence to support the allegation of discrimination, the finding *will* recommend remedial action. *Id.* [Emphasis added.]

A dissatisfied party may submit a written request for administrative review to the Vice Chancellor for Human Resources. The VC for HR will review the

findings and respond to the request within ten working days. The VC for HR will either reopen the investigation or deny the request for reconsideration. *Id.*

Documentation resulting from the investigation at each level in the complaint procedure will be maintained according to applicable records retention laws in the MCCCD EEO Office and *is not considered part of an employee's personnel file.* Documentation regarding *corrective action will be made part of the employee's personnel file. Id.* [Emphasis added.]

Every effort shall be made by the college and MCCCD to protect the *confidentiality of the parties and records* (to the extent permitted by law) during the processing of complaints under this procedure subject to law. *Id.* [Emphasis added.]

**NOTE:** There is no provision for anonymous complaints of sexual harassment, or for an individual to contact the EEO office on behalf of another employee in order to file a complaint or initiate an investigation of sexual harassment.

- Regarding public records requests for "the review of personnel files, the Governing Board of the Maricopa County Community College District establishes that the following information be disclosed regarding present or former employees:

    1. Name
    2. Titles or positions (including academic degrees and honors received)
    3. Fact of past or present employment
    4. Dates of employment
    5. Salaries or rates of pay
    6. Name of employee's current or last known supervisor
    7. Disciplinary Records
    8. Self-Evaluations
    9. Performance Reviews

    *Personnel records that are works in progress or part of the deliberative process are not subject to release.*" [Emphasis added.] **Administrative Regulation 6.17 - Requests for Public Records.**

- Records of actual "disciplinary actions" against public employees and responses thereto are specifically singled out as being open to public inspection and release through public records requests. **A.R.S. § 39-128(A).**

## III. Dr. Terry is Exonerated by the District after Two Formal Complaints of Discrimination.

35. In November 2015, Dr. Terry initiated a corrective action pursuant to District policy against Kevin Bilder, Dean of Student Affairs at Rio Salado College. Mr. Bilder had a documented history of prior performance concerns. The District sustained the corrective action that involved a violation of policy related to providing interview questions to a job applicant prior to a pre-employment interview.

36.     In response to the initiation of corrective action, in December 2015, Mr. Bilder lodged a complaint against Dr. Terry through the District's EEO Office.  This complaint alleged discrimination on the basis of disability and sexual orientation, retaliation, and a work environment that involved intimidation and bullying.  The District provided Dr. Terry with a Notice of Charge of Discrimination which included specific allegations from Mr. Bilder.

37.     On January 13, 2016, Dr. Terry provided a detailed Response to Charge of Discrimination with exhibits.  After the District reviewed the complaint and response, it opened a formal investigation.  The investigation was conducted by the EEO office by Dr. Deric Hall, an African-American male, and included interviews with ten individuals.

38.     On March 21, 2016, Dr. Deric Hall, Senior Manager of the District's EEO Office, issued a Report of Findings that exonerated Dr. Terry and determined the allegations against Dr. Terry could not be substantiated.  The Report of Findings is clearly designated as "Confidential."

39.     On February 22, 2016, Mr. Bilder filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability and sex discrimination and retaliation.  The charge was dismissed less than ten days later by the EEOC with a "no cause" finding on March 2, 2016.

40.     On May 9, 2016, Mr. Bilder lodged a second charge of discrimination with the District's EEO Office containing allegations of disability discrimination and retaliation against Dr. Terry as well as allegations of failing to accommodate disability and obstructing access to the HR Solutions Center against Dr. Terry and Sharon Koberna, Dean of Administrative and Employee Services for Rio Salado College.  The District provided Dr. Terry with a Notice of Charge of Discrimination and Dr. Terry provided a detailed response on May 26, 2016.  The District then instituted a formal investigation.

41.     On August 3, 2016, the District issued an Investigation Report which substantiated preexisting performance issues for Mr. Bilder and failed to substantiate any of his allegations against Dr. Terry.  Both of the previous Investigation Reports note complaints expressed by Rachelle Clarke during the investigation regarding the management style of Dr. Terry.

**IV.    Allegations of Sexual Harassment Against Dr. Terry and the District's Violations of his Due Process Rights and the Contractual Provisions of the Staff and MAT Policy Manuals During the Subsequent Investigation.**

42.    In or around February 2016, Dr. Terry requested a meeting with Chris Bustamante, Ed.D, who was his supervisor and President of Rio Salado College.  Early in his tenure as Vice President, Dr. Terry met with Dr. Bustamante frequently to provide strategic updates for the Division of Student Affairs.  However, the purpose of this meeting was to share challenges Dr. Terry was having with one of his direct reports, Rachelle Clarke.  Dr. Bustamante advised Dr. Terry to be cautious in his interactions with Ms. Clarke.  Dr. Bustamante stated that in the past, employees at various colleges around MCCCD and the district office have used false allegations to get their supervisors terminated or replaced.  Dr. Bustamante shared a story of a previous MCCCD Chancellor who was removed from his position because of allegations of harassment that Dr. Bustamante suspected were false.  Dr. Bustamante told Dr. Terry that he would not be surprised if Ms. Clarke attempted to either make a false allegation or orchestrate false allegations if Dr. Terry "pushed her too hard" in holding her accountable to job expectations.

43.    In or around July 2016, Dr. Terry issued a corrective action for Ms. Clarke related to her lack of responsiveness and failure to perform duties and assignments in a timely manner. When Dr. Terry began his tenure as Vice President at Rio Salado College, he made his expectations clear that all staff, especially administrators, should be present in the office.  In doing so, he denied Ms. Clarke's frequent requests to telecommute from home.  The previous vice president had allowed this practice even though it is not a policy approved by the District. After Dr. Terry issued the corrective action for Ms. Clarke, the Associate Vice President of Employee Services shared with Dr. Terry that she feared Ms. Clarke would attempt retaliation with false allegations.  The Associate Vice President of Employee Services was so concerned with Ms. Clarke's behavior and resistance to Dr. Terry as her supervisor that she offered to sit in as an observer for standing one-on-one meetings between Dr. Terry and Ms. Clarke and attended standing meetings between them for nearly a year.

44.    In or around April 2017, Dr. Terry met with Dr. Deric Hall at the District Office. During this meeting, Dr. Hall shared that the District Office had received an anonymous letter

complaining of sexual harassment and inappropriate behavior by Dr. Terry. Dr. Hall inquired if Dr. Terry was aware of any interactions that would prompt this anonymous letter being sent to the District EEO office. Dr. Terry responded by saying no and invited an investigation so that he could be exonerated for any allegation presented. Dr. Hall stated that there was nothing he could do with an anonymous letter. Dr. Hall shared that he suspected that the source of the anonymous letter was Rachelle Clarke. Dr. Hall was suspicious of Ms. Clarke based on his interactions with her when she offered statements against Dr. Terry in the previous investigations from which Dr. Terry was exonerated. Dr. Hall shared with Dr. Terry that he suspected Ms. Clarke was trying to initiate an investigation with the anonymous letter even though no one had approached the EEO office with a formal complaint of harassment per District policy and would not be surprised if she orchestrated false allegations in the future.

45.     On or around December 5, 2017, Dr. Hall presented Dr. Terry with a Notice of Charge of Discrimination dated December 5, 2017 and marked as Case #17-031. The Notice stated that a "formal discrimination complaint" had been lodged with the EEO/AA Office alleging that Dr. Terry violated the District's policies on sexual harassment and sexual discrimination. No specific allegations were provided in the Notice, but only vague, generalized assertions.

46.     The December 5, 2017 Notice of Charge of Discrimination stated in relevant part the following:

> The complaint alleges you have subjected current and former Rio Salado College female employees to verbal and/or physical conduct of a sexual nature that was unwelcome, including staring at them in a sexually suggestive manner.
>
> **An external investigator will be retained to investigate the allegations of sexual harassment.** [Emphasis added.] During this process, the investigator's job is not to advocate or represent the interest of any parties to the complaint, but rather to gather and evaluate the facts. Upon completion of the investigation, the investigator will issue a report of findings.
>
> **As the Respondent, you have seven (7) working days from the date of this notice to respond in writing to the EEO Office.** [Emphasis added.] Once I receive your reply, the investigator will interview the parties to the complaint as well as witnesses. The investigation will include witness testimony, review of documents, and other pertinent data relative to finding the facts of this case.

Please be cognizant of the following:
In order not to jeopardize the integrity of the investigatory process, I am requesting **that all matters pertaining to this charge be kept confidential.** [Emphasis added.]

47.     Dr. Terry was familiar with the process in dealing with an EEO complaint and understood the mandatory provisions of confidentiality in the investigatory process.

48.     The December 5, 2017 Notice of Charge of Discrimination contained only vague general allegations involving anonymous employees; yet, Dr. Terry was required to provide a formal written response within seven working days. The District failed to provide Dr. Terry with a reasonable summary of the allegations, depriving him of the opportunity to be heard and respond prior to the initiation of any investigation, and the failure to have the investigation conducted in-house through the District's EEO Office.

49.     In the Notice of Charge of Discrimination, the District indicated a formal investigation had already been initiated prior to receiving Dr. Terry's response to the allegations, and the use of an external investigator. The District violated its policies.

50.     Dr. Terry complained to Dr. Hall on December 8, 2017 that he had not been provided with a proper summary of the allegations against him, thereby denying him the opportunity to formulate an informed response.

51.     The District then provided Dr. Terry with a second Notice of Charge of Discrimination dated January 2, 2018. This notice stated it was prepared by Jean Wilcox in her capacity as "the external investigator appointed by the District office to investigate allegations of sexual harassment by you" pursuant to "MCCCD's Sexual Harassment policy (AR 5.1.8)." This notice also referenced the provisions of "Dr. Hall's December 5th letter regarding confidentiality."

52.     Instead of allowing Dr. Hall, the District's Senior Manager of the District's EEO Office and an African-American male, to conduct the investigation, the District hired Ms. Wilcox, a Caucasian female outside investigator, to conduct the investigation. Upon information and belief, the District was aware that Ms. Wilcox had previously conducted investigations on behalf of the District involving other African-American employees, but she never found in favor of African-American District employees who were either complainants or the subjects of an

investigation. The District demonstrated bad faith and malice by not allowing Dr. Hall, who had previously exonerated Dr. Terry in a previous EEO complaint, to investigate the complaint, and is also evidence of an investigation predetermined to find fault.

53.    On January 10, 2018, Dr. Terry provided the District with an extensive response to the January 2, 2018 Notice of Charge of Discrimination with multiple exhibits that categorically denied and refuted in great detail each of the allegations asserted against him.  Dr. Terry's response pointed out and questioned the prominent involvement and motivation of Rachelle Clarke, who never claimed to have been personally harassed, and constituted protected activity through statements in the response that the charges of harassment lodged against him were motivated in whole or in part by discrimination based on *his* race and sex.

54.    Dr. Terry's response provided over 30 pieces of material evidence and listed over 20 witnesses to refute the allegations against him.  Additionally, Dr. Terry provided the District with sworn witness declarations from two employees.

55.    A declaration from Sharon Koberna, former Dean of Employee and Administrative Services for Rio Salado College who retired in September 2016 after working approximately 30 years for the District, stated she was aware of the genuine dislike Mr. Bilder and Ms. Clarke immediately had for Dr. Terry after his hire and efforts to change the work culture at Rio Salado and make employees more accountable.  Ms. Koberna also stated that she was approached by Ms. Clarke who claimed she knew of several unnamed individuals alleging acts of sexual harassment by Dr. Terry.  Ms. Koberna informed Ms. Clarke that any violations should be reported to Dr. Hall pursuant to District policy, and she also offered to talk to any women expressing concerns about Dr. Terry.  Ms. Koberna's declaration states that no one came to her to discuss allegations of harassment against Dr. Terry.  Ms. Koberna also felt compelled to warn Dr. Terry of concerns that Ms. Clarke was actively manipulating the events in order to cause unfounded charges of sexual harassment against Dr. Terry.

56.    A declaration from Heather Windster, a District employee, recounted complaints that she received from other employees about the management style of Dr. Terry and a statement by Ms. Windster's supervisor that several employees were out to get Dr. Terry fired.  Ms.

Windster's declaration flatly contradicts the report of one female who alleged she was harassed by Dr. Terry and states that Ms. Windster had worked around Dr. Terry since his hire and "found him to be appropriate and professional in all respects . . . [and had] never seen or heard Dr. Terry engage in any inappropriate behavior[.]"

57.   External investigator Jean Wilcox drafted an Investigation Report dated January 25, 2018. The report demonstrates a pattern of serious violations of due process and contractual provisions of the Staff and MAT Policy Manuals, Administrative Regulation 5.1, and District HR procedures. Dr. Terry was emailed a copy of Ms. Wilcox's findings; however, the email failed to include the extensive set of exhibits referenced throughout the report.

58.   The Investigation Report begins by stating: "**This investigation was commenced as a result of an <u>anonymous</u> complaint** via the Workplace Alert System sent on February 20, 2017, as well as a **written report dated September 25, 2017 <u>from Rachelle Clarke</u>** (Clarke) to Deric Hall (Hall), MCCCD Office of Equity, Opportunity and Engagement (EEO), **followed by <u>a second memorandum from Rachelle Clarke</u> dated October 24, 2017 reporting complaints from several women that had previously been reported to Sharon Koberna in the Spring of 2016.**" [Emphasis added]."

59.   The District policies that form the employment contract between Dr. Terry and the District requires that all complaints must be submitted by the actual individual alleging discrimination. The first complaint against Dr. Terry was anonymous and the second and third complaints were submitted by Ms. Clarke, **who never alleged that she was personally subjected to harassment by Dr. Terry**.

60.   The Investigation Report notes that many of the alleged complaints failed to comply with the District policy that complaints must be made within 180 days of the alleged act. The report also ignores the sworn statement of Sharon Koberna stating no one ever complained to her that they had been harassed by Dr. Terry; yet, the Investigation Report cites supposed unsworn, unnamed claims of verbal complaints to Ms. Koberna as evidence substantiating charges of harassment made against Dr. Terry. The report also inexplicably rejects the sworn

declaration of Ms. Windster.  The report was not issued in a timely manner, but was provided well beyond the 90 day deadline after receipt of the first complaint by the District.

61.    Ms. Wilcox interviewed Dr. Terry during the investigation. Ms. Wilcox questioned Dr. Terry about his background as a college athlete.  Later in the Investigation Report, Ms. Wilcox used Dr. Terry's body type and background as an athlete to substantiate allegations against him (i.e. "his arms are long" and "he is an agile athlete").  This behavior by Ms. Wilcox is an overt example of implicit bias and micro-aggression toward African-Americans and particularly toward Dr. Terry, who is an African American male and a former athlete with a certain physical stature.

62.    Upon information and belief, District senior leadership who received the Investigation Report had serious reservations about its reliability and fairness to Dr. Terry as the Investigation Report was overtly slanted against Dr. Terry and has a notable biased tone.  The Investigation Report ignored evidence produced by Dr. Terry, failed to investigate the role of Ms. Clarke in orchestrating another investigation against Dr. Terry, resolved all questions of fact against Dr. Terry, used unnamed witnesses to substantiate allegations against Dr. Terry, and, consistent with other investigations conducted by Ms. Wilcox, did not find in favor of an African-American District employee.

63.    Upon information and belief, District senior leadership was concerned that Ms. Wilcox had not followed the appropriate protocol for EEO complaints as required by District policy, was concerned about  the unfair treatment of Dr. Terry by Ms. Wilcox, and worried about the legal exposure. Upon information and belief, the Vice Chancellor of HR, an African-American female, recused herself from the administrative review process due to concerns about violations of Dr. Terry's due process rights and that the District's treatment of Dr. Terry in this flawed investigative process would prompt legal action from Dr. Terry.

64.    On February 1, 2018, Dr. Terry filed a charge of discrimination against the District with the U.S. Equal Employment Opportunity Commission ("EEOC"). He then filed an amended charge on February 15, 2018 alleging that he was the victim of retaliation and discrimination based on his race and sex.

65. On February 7, 2018, Dr. Terry provided a detailed 19-page response, with additional pages of exhibits, to the Investigation Report providing specific reasons why the findings were faulty and improper and formally requested an administrative review of the matter. In this response, Dr. Terry alleged that he was a victim of retaliation and discrimination based on his race and sex.

66. According to District policy, the Vice Chancellor for Human Resources is supposed to review the findings of Ms. Wilcox and respond within ten working days by either reopening the matter for further investigation or denying the request for reconsideration. The District did neither of these actions pursuant to its own policy, but instead submitted Ms. Wilcox's report to an outside attorney for review. This outside review was never completed and the flawed investigation of Dr. Terry was never completed.

67. The District never instituted a disciplinary action against Dr. Terry concerning the allegations of sexual harassment. Dr. Terry continually rejected all allegations that he engaged in any act of sexual harassment against anyone.

68. In further violation of its policies, the District never conducted an investigation of the discrimination claims asserted by Dr. Terry in his January 10, 2018 Response to Notice of Charge of Discrimination and his request for administrative review dated February 7, 2018.

69. The District placed Dr. Terry on paid administrative leave on February 8, 2018, a non-disciplinary action. Dr. Terry's leave was announced to Rio Salado employees in an emailed letter from Dr. Bustamante. Dr. Bustamante's letter informed the college that Dr. Terry was placed on administrative leave "pending the conclusion of an investigation process. **The proceeding itself is confidential, pursuant to District policy, and all of us as employees are requested to respect that confidentiality.** The District intends to follow its process which has not yet concluded, and to conduct a fair, unbiased review of the relevant facts before reaching its final conclusion." [Emphasis added.] In fact, a "final conclusion" of the investigation was never reached.

70. In further violation of District policy, Dr. Bustamante drafted a letter dated February 21, 2018 stating he accepted the investigator's determination. Ms. Wilcox's findings

were still under administrative review by outside counsel at the time Dr. Bustamante drafted the letter.  The investigation of Dr. Terry, although never concluded, was clearly predetermined to find fault.

71.    Ms. Wilcox issued an Amendment to Investigation Report on February 25, 2018; however, the amendment was not provided to Dr. Terry at the time.  The amendment included various corrections to the January 25, 2018 report, including two requests for corrections from witnesses.  Dr. Terry learned of the amendment several months after it was issued.

72.    On March 14, 2018, a reporter from the Arizona Republic contacted the District and requested any investigative reports related to Dr. Terry, including the Investigation Report of Ms. Wilcox.  The District did not release the Investigation Report at that time.

73.    Around this same time, the District approached Dr. Terry about the possibility of entering a separation agreement.  Dr. Terry, through his counsel, entered into negotiations with the District at the District's invitation.

74.    During this time, in an effort to devise an exit strategy from the toxic atmosphere at the District, Dr. Terry applied for numerous college president and vice president positions across the country.

75.    On April 13, 2018, the District and Dr. Terry entered into a Separation Agreement and Mutual General Release (the "Separation Agreement and Release").  The Separation Agreement and Release set forth the terms governing the end of Dr. Terry's employment relationship with the District and provided an agreement that Dr. Terry would voluntarily resign from the District. The Separation Agreement and Release provided the following:

- Dr. Terry would submit a voluntary letter of resignation effective June 30, 2018;
- Dr. Terry would withdraw his charge of discrimination with the EEOC;
- Dr. Terry would withdraw his appeal of the findings in the Investigation Report;
- The Parties together would instruct the outside attorney to halt his review of the findings and refrain from issuing a decision;
- Dr. Terry continued to deny all wrongdoing, even in his withdrawal of his appeal of the findings;

- Dr. Terry would release the District and its agents from all then existing legal claims and damages;

- "Dr. Terry understands that by executing his Agreement, he is not waiving rights or claims that may arise out of acts, omissions or matters occurring after execution of this Agreement;" and

- The District agreed to provide a neutral reference concerning Dr. Terry, "with no information other than date of employment, positions held, and confirmation that Dr. Terry resigned voluntarily. If a prospective employer seeks additional information, such employer will be told that it is District policy not to convey additional information."

76.     Communications from Dr. Hall and Ms. Wilcox and District policies made clear, binding promises of confidentiality related to the findings and the investigation. Dr. Terry relied on the District's policy provisions and written promises and would not have signed the Separation Agreement and Release had he known that the District intended to violate these assurances.

**V.     The District's Actions Occurring After April 13, 2018**

77.     On either May 2, 2018 or May 3, 2018, the EEOC shared a letter with the District stating that Dr. Terry's EEOC claim was withdrawn.

78.     On May 4, 2018 and May 8, 2018, the Arizona Republic published at least two articles on its website stating the newspaper had obtained a copy of the confidential Investigation Report of Ms. Wilcox, received on May 4, 2018 under the Arizona Public Records law. Upon information and belief, the District had refused to produce the Investigation Report and other records to the Arizona Republic before May 4, 2018.

79.     The articles quoted extensively from the disputed findings, prominently included Dr. Terry's name and picture, falsely implied Dr. Terry was resigning due to the conclusions in the findings, and contained statements from District spokesman, Matt Hasson, that are demonstrably false and maliciously designed to mislead the public and paint Dr. Terry in a false light. A link to a complete copy of Dr. Bustamante's February 21, 2018 letter was also provided in the newspaper's May 4, 2018 article.

80.     Starting on May 4, 2018, additional media articles by reporter Casey Kuhn were published on KJZZ.org, the website of the District's public radio station. These articles included incomplete statements that identified Dr. Terry as resigning after an investigation into sexual misconduct. The KJZZ article indicates the reporter spoke with complainants who requested to remain anonymous. Pursuant to District policy, all parties to the investigation were to remain confidential.

81.     On August 2, 2018, an article by Casey Kuhn was posted on the KJZZ website concerning a June 13, 2018 investigation report prepared by Jean Wilcox. Ms. Kuhn had obtained a copy of the investigation report through a public records request. The June 13, 2018 report included purported issues and problems with how the District had previously handled complaints of discrimination. The August 2, 2018 article also discussed Dr. Terry and contained knowingly false and defamatory statements that were deliberately misleading and designed to paint Dr. Terry in a false light. Audio statements by official District spokesman Matthew Hasson were also included in the article which were knowingly false and deliberately misleading and incomplete in order to paint Dr. Terry in a false light.

82.     The August 2, 2018 article stated the District hired Ms. Wilcox to investigate the "handling of sexual harassment cases in the last three years at the district's Rio Salado College." The article goes on to say Ms. Wilcox's "report shows only two formal complaints in that time logged to the district's Equal Employment Opportunity manager, Deric Hall. Those were against **** Redacted **** and former Vice President of Student Affairs LeRodrick Terry, who have both been investigated and resigned." (Emphasis and redaction added.)

83.     The August 2, 2018 article failed to mention that Dr. Terry was previously exonerated and the charges of discrimination against Dr. Terry were found to be unsubstantiated. Included in the documents Ms. Kuhn received from her public records request was a copy of the March 21, 2016 report which further describes no wrongdoing by Dr. Terry regarding the charges of discrimination filed against him.

84.     The August 2, 2018 article failed to mention Ms. Kuhn had been provided with several other investigatory reports which contradicted the statement in Ms. Wilcox's report that "only two formal complaints" had been filed in the last three years.

85.     The audio recording available on the KJZZ website contains misleading and incomplete information designed to paint Dr. Terry in a false light. In the recording, Ms. Kuhn is speaking with Mr. Hasson who says "the subject of that investigation gets the report and is offered the opportunity to respond. If that individual in these cases that you spoke of, their response was either resign or retire."

86.     Ms. Kuhn responded to Mr. Hasson stating, "so basically the person accused of bad behavior has a chance to jump ship before it runs aground." Ms. Kuhn's statement was knowingly false, defamatory, and designed to present Dr. Terry in a false light.

87.     Dr. Terry had a history of teaching at Grand Canyon University. Prior to the release of the confidential information and documents, Dr. Terry was scheduled to teach three online graduate level classes in the upcoming semester. On May 7, 2018, Dr. Terry was informed that his teaching assignment had been cancelled and responsibility for conducting the classes reassigned.

88.     As a direct result of the District's actions by releasing confidential information and documents, Dr. Terry was also asked to resign from his position with FIBCO Family Services and College Bound AZ.

89.     When contacted by Dr. Terry's counsel, the District responded in a letter dated May 21, 2018 and argued that it was within its rights to release the records. In its May 21, 2018 letter, the District recognized there would be no formal decision regarding potential discipline of Dr. Terry. The District's decision to voluntarily release to the media records required to be kept confidential pursuant to District policy, for a then current employee no longer subject to discipline, as well as impliedly pursuant to the Separation Agreement and Release, is compelling evidence of bad faith, malice, and improper motive.

90.     The District's actions show overt disparate treatment in the handling of the investigation and communication of allegations against Dr. Terry compared with other similarly

situated executives at Rio Salado College, and other colleges within the District, who were accused of similar alleged wrongdoing.

91.    Upon information and belief, around 2014, before Dr. Terry began employment at Rio Salado College, Dr. Terry's predecessor, a Caucasian female, who served as Vice President of Student Affairs, was involved in an inappropriate sexual relationship with the spouse of her direct report who was also an employee at Rio Salado College. The college president and senior officials at the District office were aware of this inappropriate sexual relationship. There was no disciplinary action nor an investigation for unethical behavior and/or participation in an inappropriate workplace relationship for this senior level administrator. In fact, this senior level administrator was moved to the District office,  has remained employed by the District, and was recently promoted.

92.    Most recently, a senior level administrator at Chandler Gilbert College was accused of sexual harassment in 2017.    This administrator, a Caucasian male, was placed on administrative leave and eventually separated from the college and the District to accept a job offer at a college in a different state. The entire investigation, the administrative leave, and findings were kept confidential per MCCCD policy. There was no release of findings to media outlets nor were there any college wide emails sent out to employees at Chandler Gilbert College communicating that the senior administrator was being placed on administrative leave pending an investigation.

93.    Prior to April or May 2018, the District is known to have a long standing policy and practice of refusing public records requests based on privacy and confidentiality. The release of the confidential records related to Dr. Terry demonstrates a fundamental change in District policy.  Upon information and belief, Leslie Cooper, the District's General Counsel, is the individual with final policymaking authority and ultimate decision maker responsible for this policy change and decision to release confidential records concerning Dr. Terry.

94.    Dr. Terry subsequently submitted several public records requests to the District and discovered that on or about May 4, 2018 the District provided members of the media with numerous investigatory and deliberative documents deemed confidential and not part of Dr.

Terry's personnel file pursuant to District policy. Among the confidential documents provided to the media were various District emails, the January 25, 2018 Investigation Report by Jean Wilcox, the February 25, 2018 Amendment to Investigation Report by Jean Wilcox, the Report of Findings dated March 21, 2016 by Dr. Hall, and the Investigation Report dated August 3, 2016 by Mr. Bilder. Other documents and emails provided to the media were marked as confidential.

95.     The confidential documents the District provided to the media had redacted all complainants' names, and some documents also redacted the names of witnesses. However, all of the confidential documents provided to the media identified Dr. Terry by name. This is an egregious violation of the District's policy related to the processing of harassment complaints. As a party to the complaints, Dr. Terry also had the right to keep his name confidential and not released in conjunction with these non-discipline deliberative confidential documents.

96.     Despite freely releasing Dr. Terry's name and confidential records to the media, the District has either refused to release confidential records of other non-African-American individuals at Dr. Terry's level of employment who were subjected to investigations or has redacted their names.

97.     The District released the confidential documents to the media starting on May 4, 2018, after the Separation Agreement and Release was signed by Dr. Terry, after the District received his resignation letter effective June 30, 2018, and while he was still an employee covered by the due process and contractual protections of the Staff and MAT Policy Manuals, Administrative Regulations 5.1 and 6.17, and Human Resources procedures of the District.

98.     The District and its agents took illegal and improper actions after April 13, 2018, the effective date of the Separation Agreement and Release, which released all prior claims against the District and its agents.

99.     As a result of Defendants' actions, Dr. Terry has been damaged and continues to be damaged.

100.     Dr. Terry has also suffered emotional distress because of the illegal and inappropriate treatment he received from the District. His wife, Aisha Terry, has also suffered damages because of the Defendants' actions against her husband.

101. The actions of Defendants have damaged Dr. Terry's good name, reputation, honor and integrity to such a degree that it has virtually made it impossible for Dr. Terry to find employment in his chosen field. Dr. Terry has applied for numerous comparable positions throughout the country since early 2018 through the present, but he has been consistently rejected because of the publications by Defendants. The actions of Defendants have made Dr. Terry essentially unemployable in his chosen field.

102. Defendants' wrongful actions have essentially blacklisted Dr. Terry from his chosen occupation. The character and circumstances of the Defendants' stigmatizing conduct or statements have destroyed Dr. Terry's freedom to take advantage of other employment opportunities.

103. Dr. Terry has also suffered damages to include the cost of education of his children. Because of the Defendants' actions ultimately leading to the end of his employment with the District, Dr. Terry has lost the benefit of free college tuition for his children. This has created an additional financial burden on Dr. Terry and Aisha Terry.

104. On December 21, 2018, Plaintiff filed a charge of discrimination with the EEOC against the District alleging retaliation.

105. On February 20, 2019, the EEOC mailed Plaintiff a right to sue letter.

106. Plaintiff timely filed this lawsuit.

**COUNT I**

**(Breach of Contract)**

**(Against the District)**

107. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

108. Pursuant to Arizona statute, A.R.S. § 23-1501(A)(2), and other state and common law, the terms and conditions set forth in an employment handbook may constitute a binding valid employment contract between employer and employee.

109. Such an employment contract was created between the District and Dr. Terry through the District's policies. The District had a binding contractual obligation to fully and

-24-

completely comply with the policies and procedures of the Staff and MAT Policy Manuals, Administrative Regulations, and HR Procedures. The District was also contractually bound to comply with the Separation Agreement and Release.

110.   The employment contract set forth detailed contractual obligations and due process provisions that governed and controlled the actions and conduct of the District and its representatives in any complaint, investigation, or other similar matter related to or involving the job performance or discipline of Dr. Terry, and the confidentiality of any investigation report prepared for the District.

111.   The actions of the District, its representatives, and its counsel, Leslie Cooper, violated the contractual provisions of the Staff Manual, Administrative Regulation 5.1.13, Administrative Regulation 6.17, and the Separation Agreement and Release by releasing the confidential Investigation Report of Ms. Wilcox and other records to the media.

112.   The District breached the contract through actions taken after the Separation Agreement and Release was signed on April 13, 2018, including multiple violations of the confidentiality provisions of the contract.

113.   The District released at least one document marked confidential, and released multiple confidential documents related to two of the three groundless investigations of Dr. Terry. These documents are not public records. Also, Dr. Terry's name was not redacted like other party names from the documents released to the media, which violates District policy.

114.   The District is contractually obligated to protect confidential documents, reports, and the name of Dr. Terry. The District breached this obligation by releasing the confidential report and other confidential documents.

115.   As a natural and proximate consequence of the District's breach, Dr. Terry has been deprived of his reasonable expectations in his contractual relationship with the District. Dr. Terry signed the Separation Agreement and Release with the reasonable expectations that the District would protect the confidentiality of the Investigation Report. The District's intent to fulfill the pending public records requests and breach the reasonable expectations of confidentiality was a material fact that should have been clearly and unambiguously conveyed to Dr. Terry. As

justification and support of Dr. Terry's reasonable expectations, the District agreed with Dr. Terry that if potential employers called the District seeking information concerning Dr. Terry, the District would provide limited, neutral information.  Given the expectation that the District would not reveal the Investigation Report to potential employers, the District's subsequent release of damaging confidential information from the questionable Investigation Report, was against Dr. Terry's reasonable expectations and breached the District's contracts with Dr. Terry.

116.   As a direct result of the District's breach, Dr. Terry has suffered significant economic and consequential damages.

117.   In the alternative, Dr. Terry seeks rescission of the Separation Agreement and Release and reinstatement to his previous position of Vice President at Rio Salado College, or comparable position, with back pay and benefits.

118.   Because this claim arises from a breach of contract, Dr. Terry is entitled to recover his reasonable attorney's fees pursuant to A.R.S. § 12-341.01(A).

## COUNT II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Against the District)

119.   All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

120.   The covenant of good faith and fair dealing is implied in every contract.

121.   Pursuant to Arizona statute, A.R.S. § 23-1501(A)(2), and other state and common law, the terms and conditions set forth in an employment handbook may constitute a valid employment contract between employer and employee.

122.   The terms and conditions of the District's employee handbook and MAT manual created a valid employment contract between the District and Dr. Terry.

123.   The terms and conditions of the Separation Agreement and Release constitute a valid contract between the District and Dr. Terry.

124.   The District failed to inform Dr. Terry of its intent to release the Investigation Report and other records pursuant to a pending public records request by the Arizona Republic

prior to doing so, even though the District knew that allowing publication of the Investigation Report would completely frustrate the purposes of the Separation Agreement and Release. The District also failed to indicate to Dr. Terry whether the District considered the Investigation Report to be a public record that would be released to the public.

125. The District unreasonably failed to deny the pending public records requests by the Arizona Republic, which would then have allowed review by the superior court to (1) determine whether the Investigation Report is a public record and, if so, (2) weigh Dr. Terry's interests in privacy and confidentiality against Arizona policy in favor of disclosing public records.

126. The District did not release the Investigation Report to the Arizona Republic until after securing the Separation Agreement and Release and having received notice from the EEOC that Dr. Terry dropped his EEOC claim against the District.

127. The actions and conduct of Defendants constituted bad faith and a breach of the implied covenant of good faith and fair dealing and, as a result, Dr. Terry was wrongfully deprived of the rights and benefits available to him under these contracts.

128. As a result, Dr. Terry suffered significant damage.

129. Dr. Terry justifiably relied upon the District's representations, actions, and omissions to his detriment.

130. As a direct and proximate result of the Defendant's breach, Dr. Terry has suffered significant damages, including but not limited to, loss of income in the form of past, present, and future wages and savings.

131. The District also provided false and misleading statements to at least two media outlets related to the quality of the investigation and the actions of the District.

132. As a result of the Defendant's breach, Dr. Terry seeks all compensatory, consequential, and incidental damages available to him under this claim in an amount to be proven at trial.

133. In the alternative, Dr. Terry seeks rescission of the Separation Agreement and Release and reinstatement to his previous position of Vice President at Rio Salado College, or comparable position, with back pay and benefits.

134. Because this claim arises from breach of contract, Dr. Terry is entitled to recover his reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A).

## COUNT III

### (Violation of 42 U.S.C. § 1981)

### (Against the District)

135. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

136. Federal statute 42 U.S.C. § 1981 provides in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

137. 42 U.S.C. § 1981 defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

138. Dr. Terry was deprived of his ability to enjoy the benefits, privileges, terms, and conditions of his contracts with the District, including the contractual provisions of the Staff Manual, Administrative Regulation 5.1.13, Administrative Regulation 6.17, and the Separation Agreement and Release, because of his race.

139. Several other non-African-American employees in similar positions at the District as Dr. Terry who had been accused of sexual harassment or other inappropriate behaviors did not have their confidential records released pursuant to public records requests, had their names redacted upon release, or were able to accept new positions because the investigations and communications were kept confidential in accordance with the Staff and MAT Policy Manuals.

140. The District's release of the Investigation Report with Dr. Terry's name unredacted deprived Dr. Terry of his contractual rights because the District protected the names and any confidential documents of other non-African-American employees in a similar position as Dr. Terry in accordance with the Staff and MAT Policy Manuals. In contrast, Dr. Terry had his good

name, reputation, honor, and integrity defamed by the District's release of the Investigation Report with his name unredacted.

141.   Moreover, the District released other confidential documents to the media, including various District emails, the January 25, 2018 Investigation Report by Jean Wilcox, the February 25, 2018 Amendment to Investigation Report by Jean Wilcox, the Report of Findings dated March 21, 2016 by Dr. Hall, and the Investigation Report dated August 3, 2016, each of which failed to redact Dr. Terry's name, even though these documents consistently redacted the names of non-African-American employees.

142.   The District's actions reveal a pattern of discriminatory practices and disparate treatment whereby the district intentionally protects non-African-American employees over African-American males in releasing to the public confidential information concerning allegations of misconduct.

143.   The District's actions demonstrated bad faith and either malice or reckless indifference to the federally protected rights of Dr. Terry.

144.   Dr. Terry is also entitled to recover his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1981a and all other applicable statutes.

## COUNT IV

### (Violation of 42 U.S.C. § 1983)

### (Against the District and Leslie Cooper)

145.   All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

146.   Federal statute 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

147.   Based on the actions described herein, the District and its employees and agents, including Leslie Cooper, are liable for violations of 42 U.S.C. § 1983.

148.    Ms. Cooper is liable in both her official and individual capacity, as she acted with final policymaking authority and made the ultimate decision to release confidential information and records related to Dr. Terry in violation of his recognized rights.

149.    As described herein, the District and Ms. Cooper acted under the color of state law to deprive Dr. Terry of his substantive and procedural due process rights, his property interest in his employment, and his liberty interest in his good name and reputation.  The District deprived Dr. Terry of these rights by purposely failing to inform him of their intent to release the Investigation Report with Dr. Terry's name unredacted so as to induce and mislead Dr. Terry into agreeing to the Separation Agreement and Release and waiving his rights.

150.    The District and Ms. Cooper did not inform Dr. Terry of their intent to release the Investigation Report pursuant to pending public records requests when negotiating the Separation Agreement and Release, which provided that Dr. Terry would resign from his position as Vice President at Rio Salado College and waive his rights to appeal any potential disciplinary action, even though the District intended to release the requested records, and actually did so without notifying Dr. Terry.  Had Dr. Terry known of the District's intention to release the requested records, he would not have resigned from his position but would have appealed any determination by the District of misconduct so that he could protect his property interest in his employment under MAT Policy and Staff Manuals as well as his liberty interest in his good name, reputation, honor, and integrity.

151.    The District and Ms. Cooper have deprived Dr. Terry of his liberty interest in his good name, reputation, honor, and integrity by their release of the Investigation Report for publication.

152.    The Defendants also violated Dr. Terry's substantive due process rights by making defamatory statements and essentially blacklisting Dr. Terry when they caused to be circulated and published to the public the Investigation Report and other highly offensive, defamatory and disparaging records and statements.

-30-

153.   Dr. Terry has suffered humiliation and degradation, pain and suffering, economic loss, and violations of his rights due to the unconstitutional and illegal practices of the District and Ms. Cooper.

154.   Dr. Terry has been unable to obtain employment in his chosen field, which is virtually impossible as a result of the defaming publication of the Investigation Report released by the District.

155.   Under 42 U.S.C. § 1983, the District and Ms. Cooper are liable to Dr. Terry for the violations of his constitutional and statutory rights and privileges described herein, entitling Dr. Terry to recover damages and to all other rights, remedies, in law or in equity, available to him under 42 U.S.C. § 1983 or other applicable statutes.

156.   As described herein, the actions of Ms. Cooper were undertaken with a reckless indifference or callous disregard for the constitutionally and statutorily protected rights and privileges of Dr. Terry, rendering Ms. Cooper liable for punitive damages in her individual capacity.

157.   Dr. Terry is also entitled to recover his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable statutes.

## COUNT V

### (Defamation)

### (Against the District, Matthew Hasson, and Casey Kuhn)

158.   All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

159.   As described herein, false statements concerning Dr. Terry were made by official District spokesman Matthew Hasson and KJZZ correspondent Casey Kuhn to one or more members of the media.  These statements were then published over the internet in articles and downloadable audio files and played on the radio.

160.   The defamatory statements of the District, Matthew Hasson, and Casey Kuhn were knowingly false and malicious and were purposely made to one or more members of the media.

161.   The false and defamatory statements were made pursuant to the Investigation Report.

162.   The District, Matthew Hasson, and Casey Kuhn seriously doubted the veracity of the Investigation Report or reasonably should have doubted its veracity given the District's knowledge that the Investigation Report was overtly slanted against Dr. Terry, that Ms. Wilcox had not followed District policy for EEO complaints, and that Ms. Wilcox ignored information and key witnesses that were favorable to Dr. Terry.

163.   These false and defamatory statements remain accessible all over the Internet through such things as the published news articles, downloadable audio files, media reports, and other postings.

164.   The actions of the District and its employees demonstrate slander per se.  The false and defamatory statements made against Dr. Terry clearly prejudices him in his professional career, attacks his honesty, falsely implies he is unfit to work in an institution of higher learning, and severely prejudices him in his professional career.  Dr. Terry has also had his good name, integrity, and reputation impeached as a result of the defamatory statements.

165.   The District fulfilled the public records requests of the Arizona Republic after entering the Separation Agreement and Release with Dr. Terry without informing him that they would release the records before doing so and despite knowing that the Investigation Report and other confidential documents contained false and defamatory statements about Dr. Terry.

166.   The District acted maliciously or with reckless disregard in releasing the Investigation Report and other confidential documents without informing Dr. Terry of their decision before doing so or allowing the superior court to determine if the confidential documents were public records and, if so, to weigh the balances between Dr. Terry's confidentiality and privacy interests and Arizona policy in favor of disclosing public records.

167.   Because the defamatory statements of the District, Matthew Hasson, and Casey Kuhn were knowingly false and malicious, they are not entitled to immunity.

## COUNT VI

### (Invasion of Privacy—Public Disclosure of Private Facts)

### (Against the District and Leslie Cooper)

168.   All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

169.   Arizona recognizes the importance of the right of privacy for its citizens.   No person shall be disturbed in his private affairs without authority of the law.  Arizona Constitution, Article 2, Section 8.

170.   Dr. Terry's claim for invasion of privacy for public disclosure of private facts arises out of both contract and tort.   The District made a decision to release contractually protected confidential information and documents related to Dr. Terry to members of the media on at least three occasions, in violation of Dr. Terry's valid employment contract with the District and despite the false and defamatory statements contained in the confidential records.

171.   The District either seriously doubted the veracity of the Investigation Report or reasonably should have doubted its veracity given the District's knowledge that the Investigation Report was overtly slanted against Dr. Terry, that Ms. Wilcox had not followed District policy for EEO complaints, and that Ms. Wilcox ignored information and key witnesses that were favorable to Dr. Terry.

172.   Leslie Cooper acted as an officer of the District as the final decision maker with policymaking authority to make the ultimate decision to release confidential information and records relating to Dr. Terry.

173.   Dr. Terry also had a constitutional and common law right to privacy that was violated by the District releasing the confidential records.

174.   The District and Ms. Cooper's release of these confidential records would be highly offensive to a reasonable person in Dr. Terry's place, particularly given the false and defamatory statements contained in the confidential records.

175.   Dr. Terry has suffered damages to his reputation, financial loss, and has experienced severe emotional distress as a result of the Defendants' actions.

## COUNT VII

### (False Light a/k/a False Light Invasion of Privacy)

### (Against the District, Matthew Hasson, and Casey Kuhn)

176.   All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

177.   The Defendants' reckless publication of misleading information concerning Dr. Terry created a false implication about him, causing him serious injury.

178.   The Defendants' actions as described herein demonstrate a deliberate effort by Matthew Hasson and Casey Kuhn to use slanted, misleading, false, and incomplete statements and innuendo to paint Dr. Terry in a false light.

179.   Dr. Terry has suffered damages to his reputation, financial loss, and has experienced severe emotional distress as a result of the Defendants' actions.

## COUNT VIII

### (Intentional Infliction of Emotional Distress)

### (Against All Defendants)

180.   All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

181.   The actions described in this Complaint committed by the Defendants in this matter constitute extreme and outrageous conduct under Arizona law and were either intended to cause Dr. Terry severe emotional distress or were so recklessly indifferent to the near certainty that the acts described in this Complaint would cause Dr. Terry severe emotional distress that they can be considered intentional.

182.   Dr. Terry suffered severe and debilitating emotional distress, humiliation, and degradation as a result of the acts undertaken by Defendants, entitling him to recover damages.

/ / /

## COUNT IX

### (Retaliation in Violation of Title VII)

### (Against the District)

183. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

184. Dr. Terry has been subjected to retaliation by the District and its agents in direct contravention of 42 U.S.C. § 2000e-3(a).

185. As described herein, Dr. Terry engaged in protected activity when he filed a charge of discrimination with the EEOC alleging racial discrimination. Dr. Terry further complained of being the victim of racial discrimination verbally during the investigations conducted by Ms. Wilcox and in writing through the Response to Notice of Charge of Discrimination and Request for Administrative Review.

186. Dr. Terry's protected activity was acknowledged by the District in the January 25, 2018 Investigation Report; yet, the District did not investigate Dr. Terry's complaints.

187. As a direct result of his protected activities, Dr. Terry was subjected to further acts of retaliation including the District maliciously releasing confidential information and documents in violation of 42 U.S.C. § 2000e-3(a).

188. Under Title VII, the District is responsible for the illegal retaliation of its management, supervisors, employees, and agents.

189. Dr. Terry is a victim of the District's unlawful employment practices and as a result he has been and will continue to be unlawfully deprived of income in the form of lost wages and other benefits.

190. As a result of the District's illegal actions, Dr. Terry has suffered compensable damages and is entitled to all relief authorized by 42 U.S.C. § 1981a. Among other things, Dr. Terry is entitled to back pay, reinstatement, or in lieu of reinstatement, front pay and compensatory damages for his emotional suffering.

191. Dr. Terry is also entitled to recover his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

**COUNT X**

**(Loss of Consortium)**

**(Against All Defendants)**

192.    All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

193.    As a result of the illegal and improper actions of Defendants as described herein, Dr. Terry has suffered.  Aisha Terry has suffered a degraded familial relationship and been deprived of the care, protection, support, services, society, advice, companionship, love, and affection of her spouse, Dr. Terry, rendering Defendants liable to Ms. Terry for her loss of consortium.

**WHEREFORE,** Plaintiffs request that this court enter judgment in their favor and against the Defendants as follows:

A.    Declare that the employment practices complained of in this Complaint are unlawful and that they violate 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e-3(a) and the state statutory and common law claims asserted in this Complaint;

B.    Order that the Defendants pay Plaintiff Dr. Terry his economic and non-economic damages and losses including lost wages, back pay, front pay, and lost benefits, including lost retirement benefits and lost tuition benefits;

C.    In the alternative, rescind the Separation Agreement and Release between the District and Plaintiff Dr. Terry and reinstate Dr. Terry to his previous position of Vice President at Rio Salado College, or a comparable position, with back pay and benefits;

D.    Order that Defendants pay Plaintiff Dr. Terry for all emotional distress and bodily harm, pain and suffering, harm to reputation, loss of earning capacity, and all other losses or damages that he has suffered;

E.    Order that Defendants pay Plaintiffs all general, special, compensatory, consequential, and incidental damages available to them in an amount to be proved at trial;

F.    Award Plaintiff Dr. Terry punitive damages, as permitted by law;

G.    Award Aisha Terry damages for loss of consortium;

H.      Order Defendants to pay Plaintiffs' expenses, costs, and reasonable attorneys' fees pursuant to all applicable federal and state statutes;

I.      Award Plaintiffs prejudgment interest on all liquidated sums awarded in judgment at the highest legal rate allowable;

J.      Award Plaintiffs interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

K.      Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the District to file such reports as the Court deems necessary to evaluate such compliance; and

L.      For such other and further relief as this Court deems proper and just under the circumstances.

**DATED** this 7th day of October, 2019.

**JACKSON WHITE**

By:     Michael R. Pruitt, SBN 011792
        Nathaniel J. Hill, SBN 028151
        Grant S. Cragun, SBN 034332
        40 North Center Street, Suite 200
        Mesa, Arizona   85201
        *Attorneys for Plaintiffs*

**ORIGINAL** of the foregoing filed with the Clerk of the Court this 7th day of October, 2019.

By:_____

F:\STU\Terry, LeRodrick\Pleadings\Complaint.docx

Exhibit A

# TOLLING AGREEMENT

This tolling agreement (the "Agreement") is entered into by and between:

(i)     LeRodrick Terry, Ph.D. ("Dr. Terry") and his wife, Aisha Terry (collectively, "the Terry Parties"); and

(ii)    Maricopa County Community Colleges District (the "District"), and District employees Leslie Cooper, Matthew Hasson, and Casey Kuhn, and their respective spouses (collectively, "the District Parties").

The parties may be referred to individually as a "Party" or together as the "Parties."

## Recitals

A.      Dr. Terry is a former District employee. On October 9, 2018, the Terry Parties served a Notice of Claim on the District Parties. In the Notice of Claim, the Terry Parties allege that the District Parties' actions violated their legal rights in multiple ways (the "Dispute"). The District Parties deny liability to the Terry Parties.

B.      On April 3, 2019, counsel for the Terry Parties and counsel for the District Parties met to discuss the Notice of Claim and various issues related to the Dispute. The Parties want to provide additional time for such discussions, including discussion of possible alternative dispute resolution.

The Parties affirm the accuracy of the foregoing recitals and hereby agree as follows:

## Terms of Agreement

1.      The effective date of this Agreement is April 12, 2019 (the "Effective Date").

2,      The running of any statutes of limitation with respect to all legal claims and causes of action that the Terry Parties (separately or together) have, or may have, against the District Parties (separately or together) related to the Dispute shall be tolled from the Effective Date through and including the first to occur of (i) sixty (60) calendar days after delivery by any Party of notice of termination pursuant to Section 6 below, or (ii) October 12, 2019 (the "Tolling Expiration Date"). The legal claims and causes of action tolled are not limited to those stated in the Notice of Claim, but must relate to the Dispute. Any such legal claims or causes of action filed on or before the Tolling Expiration Date shall be timely if such legal claim or cause of action would have been timely had it been filed on the Effective Date.

3.      The tolling provided by this Agreement is prospective only and does not waive any defense to any claims or causes of action that may otherwise be barred as of the Effective Date due to a statute of limitations defense or otherwise. The District Parties expressly reserve the right to challenge the sufficiency of any complaint that might be filed against one or more of them, and further reserve the right to assert any and all applicable defenses to any claims that might be made against one or more of them.

4.      Neither the execution nor the contents of this Agreement may be used or construed as an admission of liability or waiver of any claim for relief by any Party. This Agreement is inadmissible for any purpose except to establish the tolling to which the Parties have agreed or otherwise to vindicate the Parties' right under this Agreement.

5.      The Parties may agree to pursue alternative dispute resolution, but this Agreement does not require them to do so.

6.      In accordance with Section 2 above, this Agreement shall be terminable with written notice, at any time and for any reason, by any Party. Such termination shall be effective sixty (60) calendar days after delivery of the notice of termination. Such notice shall be sent in writing via electronic mail, with a hard copy sent via overnight courier, to:

Notice to the Terry Parties:          Michael R. Pruitt
                                      Jackson White
                                      40 North Center Street, Suite 200
                                      Mesa, Arizona 85201
                                      Email: MPruitt@jacksonwhitelaw.com

Notice to the District Parties:       Kent Brockelman
                                      Coppersmith Brockelman PLC
                                      2800 North Central Ave., Suite 1900
                                      Phoenix, Arizona 85004
                                      Email: kbrockelman@cblawyers.com

7.      If this Agreement does not terminate pursuant to Section 6, this Agreement shall automatically terminate on October 12, 2019.

8.      Dr. Terry or the Terry Parties may file a lawsuit or other legal action against one or more of the District Parties at any time after service of a notice of termination pursuant to Paragraph 6.

9.      This Agreement may be modified only in a written agreement signed by the Parties to be bound by such modification. This Agreement is the entire agreement of the Parties concerning the subject matter of this Agreement. There are no side agreements of any kind concerning that subject matter.

10.     This Agreement may be executed in counterparts. For convenience, counsel for the Parties have executed this Agreement on behalf of the Parties, and with their permission.

Dated: _April 29, 2019_

JACKSON WHITE PC

By: Michael R. Pruitt, counsel for the Terry Parties

Dated: _April 29, 2019_

COPPERSMITH BROCKELMAN PLC

By: Kent Brockelman, counsel for the District Parties

Exhibit 2

# Exhibit 2

**COPY**

OCT - 7 2019



CLERK OF THE SUPERIOR COURT
J. WHITE
DEPUTY CLERK

1
2

# JACKSON WHITE
### ATTORNEYS AT LAW
*A Professional Corporation*

3
4   40 North Center Street, Suite 200
    Mesa, Arizona   85201
5   Telephone No.:      (480) 464-1111
    Facsimile No.:      (480) 464-5692
6   Email:      centraldocket@jacksonwhitelaw.com
    *Attorneys for Plaintiffs*
7   By:   Michael R. Pruitt, SBN 011792
          Email:      mpruitt@jacksonwhitelaw.com
          Nathaniel J. Hill, SBN 028151
8         Email:      nhill@jacksonwhitelaw.com
          Grant S. Cragun, SBN 034332
9         Email:      gcragun@jacksonwhitelaw.com

10      **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11          **IN AND FOR THE COUNTY OF MARICOPA**

12   LeRodrick Terry, Ph.D. and Aisha Terry,
     husband and wife,
13
14                 Plaintiffs,
15   v.
16   Maricopa County Community College
     District; Leslie Cooper, as General
17   Counsel of Maricopa County Community
     College District and in her personal
18   capacity, and John Doe Cooper; Matthew
     Hasson, as a Spokesperson for Maricopa
19   County Community College District and
     in his personal capacity, and Jane Doe
20   Hasson; Casey Kuhn, as a Senior Field
     Correspondent and in her personal
21   capacity, and John Doe Kuhn; John and
     Jane Does I-X; Black Corporations I-X;
22   White Partnerships I-X; and Red Limited
     Liability Companies I-X,
23
24                 Defendants.

Case No.:  CV2019-097031

**DEMAND FOR JURY TRIAL**

25         Pursuant to Ariz.R.Civ.P. 38(b), Plaintiffs file their demand for a jury trial in this matter.

26
27
28   / / /

-1-

**DATED** this 7th day of October, 2019.

**JACKSON WHITE**

By:    Michael R. Pruitt, SBN 011792
       Nathaniel J. Hill, SBN 028151
40 North Center Street, Suite 200
Mesa, Arizona  85201
*Attorneys for Plaintiffs*

**ORIGINAL** of the foregoing filed with
the Clerk of the Court this 7th day of
October, 2019.

By:

F:\STU\Terry, LeRodrick\Pleadings\Demand for Jury Trial.docx

Exhibit 3

# Exhibit 3





OCT - 7 2019

CLERK OF THE SUPERIOR COURT
J. WHITE
DEPUTY CLERK

**JACKSON WHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona  85201
Telephone No.:      (480) 464-1111
Facsimile No.:      (480) 464-5692
Email:      centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiffs*
By:    Michael R. Pruitt, SBN 011792
       Email:      mpruitt@jacksonwhitelaw.com
       Nathaniel J. Hill, SBN 028151
       Email:      nhill@jacksonwhitelaw.com
       Grant S. Cragun, SBN 034332
       Email:      gcragun@jacksonwhitelaw.com

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| LeRodrick Terry, Ph.D. and Aisha Terry, husband and wife, | Case No.: **CV 2 0 1 9 - 0 9 7 0 3 1** |
| Plaintiffs, | **CERTIFICATE RE: COMPULSORY ARBITRATION PURSUANT TO RULE 72** |
| v. | |
| Maricopa County Community College District; Leslie Cooper, as General Counsel of Maricopa County Community College District and in her personal capacity, and John Doe Cooper; Matthew Hasson, as a Spokesperson for Maricopa County Community College District and in his personal capacity, and Jane Doe Hasson; Casey Kuhn, as a Senior Field Correspondent and in her personal capacity, and John Doe Kuhn; John and Jane Does I-X; Black Corporations I-X; White Partnerships I-X; and Red Limited Liability Companies I-X, | |
| Defendants. | |

The undersigned certifies that he or she knows the dollar limits and any other limitations set forth by the local rules of practice for the applicable superior court, and further certifies that this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

1

**DATED** this 7th day of October, 2019.

2

**JACKSON WHITE**

3

4

By:    Michael R. Pruitt, SBN 011792

5
        Nathaniel J. Hill, SBN 028151

6
40 North Center Street, Suite 200
Mesa, Arizona  85201

7
*Attorneys for Plaintiffs*

8

**ORIGINAL** of the foregoing filed with

9
the Clerk of the Court this 7th day of
October, 2019.

10

11
By:

12
F:\STU\Terry, LeRodrick\Pleadings\Certificate re Compulsory Arbitration.docx

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 4

# Exhibit 4

# JACKSON WHITE
## ATTORNEYS AT LAW
### A Professional Corporation

40 North Center Street, Suite 200
Mesa, Arizona   85201
Telephone No.:      (480) 464-1111
Facsimile No.:      (480) 464-5692
Email:      centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiffs*
By:      Michael R. Pruitt, SBN 011792
         Email:      mpruitt@jacksonwhitelaw.com
         Nathaniel J. Hill, SBN 028151
         Email:      nhill@jacksonwhitelaw.com
         Grant S. Cragun, SBN 034332
         Email:      gcragun@jacksonwhitelaw.com

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| LeRodrick Terry, Ph.D. and Aisha Terry, husband and wife, | |
| Plaintiffs, | Case No.:  CV2019-097031 |
| v. | **NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS** |
| Maricopa County Community College District; Leslie Cooper, as General Counsel of Maricopa County Community College District and in her personal capacity, and John Doe Cooper; Matthew Hasson, as a Spokesperson for Maricopa County Community College District and in his personal capacity, and Jane Doe Hasson; Casey Kuhn, as a Senior Field Correspondent and in her personal capacity, and John Doe Kuhn; John and Jane Does I-X; Black Corporations I-X; White Partnerships I-X; and Red Limited Liability Companies I-X, | |
| Defendants. | |

TO:   **Kent Brockelman**
      **COPPERSMITH BROCKELMAN PLC**
      **2800 North Central Avenue, Suite 1900**
      **Phoenix, Arizona   85004**
      ***Attorneys for Defendants***

-1-

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this Notice. The complaint has been filed in the Superior Court for the State of Arizona in and for the County of Maricopa and has been assigned case number CV2019-097031.

This is not a formal summons or notification from the Court, but rather my request that you sign and return the enclosed Waiver of Service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within 30 days after the date designated below as the date on which this Notice of Lawsuit and Request for Waiver of Service of Summons is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the Waiver of Service is also attached for your records.

If you comply with this request and return the signed Waiver of Service, the waiver will be filed with the Court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, and you will be required to answer or otherwise respond to the complaint within sixty (60) days from the date designated below as the date on which this notice is sent (or within ninety (90) days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Arizona Rules of Civil Procedure and then, to the extent authorized by those Rules, I will ask the Court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to avoid unnecessary costs of service of summons, which is set forth on the reverse side (or at the foot) of the enclosed "Waiver of Service of Summons" form.

I affirm that this Notice of Lawsuit and Request for Waiver of Service of Summons is being sent to you on behalf of the Plaintiffs on the date indicated below.

/ / /

NOTICE AND REQUEST SENT this 14th day of October, 2019.

**JACKSON WHITE**


 /s/ Michael R. Pruitt
By:    Michael R. Pruitt, SBN 011792
       Nathaniel J. Hill, SBN 028151
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiffs*

**ORIGINAL** of the foregoing e-filed with the
Clerk of the Superior Court using AZTurboCourt
this 14th day of October, 2019.

**COPY** of the foregoing mailed and emailed this
14th day of October, 2019, to:

Kent Brockelman
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, Arizona   85004
Email:   KBrockelman@cblawyers.com
*Attorneys for Defendants*


By:  /s/ Debra Carpenter
F:\STU\Terry, LeRodrick\Pleadings\Notice of Lawsuit and Request for Waiver of Service of Summons.docx

Exhibit 5

# Exhibit 5

of the Superior Court
*** Electronically Filed ***
M. Cain, Deputy
11/8/2019 9:55:00 AM
Filing ID 11072787

1

2

# JACKSONWHITE
### ATTORNEYS AT LAW
*A Professional Corporation*

3

4

40 North Center Street, Suite 200
Mesa, Arizona  85201
Telephone No.:      (480) 464-1111
Facsimile No.:      (480) 464-5692
Email:      centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiffs*
By:    Michael R. Pruitt, SBN 011792
        Email:      mpruitt@jacksonwhitelaw.com
        Nathaniel J. Hill, SBN 028151
        Email:      nhill@jacksonwhitelaw.com
        Grant S. Cragun, SBN 034332
        Email:      gcragun@jacksonwhitelaw.com

5

6

7

8

9

10

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11

## IN AND FOR THE COUNTY OF MARICOPA

12

13

14

15

16

17

18

19

20

21

22

23

24

| | |
|---|---|
| LeRodrick Terry, Ph.D. and Aisha Terry, husband and wife,<br><br>                    Plaintiffs,<br><br>v.<br><br>Maricopa County Community College District; Leslie Cooper, as General Counsel of Maricopa County Community College District and in her personal capacity, and John Doe Cooper; Matthew Hasson, as a Spokesperson for Maricopa County Community College District and in his personal capacity, and Jane Doe Hasson; Casey Kuhn, as a Senior Field Correspondent and in her personal capacity, and John Doe Kuhn; John and Jane Does I-X; Black Corporations I-X; White Partnerships I-X; and Red Limited Liability Companies I-X,<br><br>                    Defendants. | Case No.:  CV2019-097031<br><br>**WAIVER OF SERVICE OF SUMMONS** |

25

26

27

28

TO:    **Michael R. Pruitt**
        **Nathaniel J. Hill**
        **Grant S. Cragun**
        **JACKSON WHITE**
        **40 North Center Street, Suite 200**
        **Mesa, Arizona   85201**

-1-

I acknowledge receipt of your request that I waive service of a summons in the action of *LeRodrick Terry, Ph.D., et al. v. Maricopa County Community College District, et al.*, which is case number CV2019-097031 in the Superior Court of the State of Arizona in and for the County of Maricopa.  I also have received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by the Arizona Rules of Civil Procedure.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within sixty (60) days after October 14, 2019, or within ninety (90) days after that date if the request was sent outside the United States.

Dated this 4th day of ~~October~~ November, 2019.

Kent Brockelman
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, Arizona   85004
*Attorneys for Defendants*


**DUTY TO AVOID UNNECESSARY COSTS OF SERVICE OF SUMMONS**

Rule 4.1 and Rule 4.2 of the Arizona Rules of Civil Procedure require certain parties to cooperate in saving unnecessary costs of service of the summons and a pleading.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must, within the time specified on the waiver form, serve on the plaintiffs' attorney (or unrepresented plaintiff) a response to the complaint and also must file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

Exhibit 6

# Exhibit 6

1  Kent Brockelman (009627)
2  D. Andrew Gaona (028414)
   **COPPERSMITH BROCKELMAN PLC**
3  2800 North Central Avenue, Suite 1900
   Phoenix, Arizona  85004
4  T:  (602) 381-5477
5  kbrockelman@cblawyers.com
   agaona@cblawyers.com
6
   *Attorneys for Defendants*
7

8                  **ARIZONA SUPERIOR COURT**

9                     **MARICOPA COUNTY**

10  LeRodrick Terry, Ph.D. and Aisha Terry,      ) No. CV2019-097031
    husband and wife,                            )
11                                               )
12                         Plaintiffs,           ) **NOTICE OF REMOVAL**
                                                 )
13  v.                                           )
                                                 )
14  Maricopa County Community College           ) (Assigned to the Hon. David Palmer)
    District; Leslie Cooper, as general counsel of )
15  Maricopa County Community College District  )
    and in her personal capacity, and John Doe  )
16  Cooper; Matthew Hasson, as a spokesperson    )
    for Maricopa County Community College        )
17  District and in his personal capacity, and Jane )
    Doe Hasson; Casey Kuhn, as a senior field    )
18  correspondent and in her personal capacity,  )
    and John Doe Kuhn; John and Jane Does I-X;   )
19  Black Corporations I-X; White Partnerships I- )
20  X; and Red Limited Liability Companies I-X,  )
                                                 )
21                                               )
                         Defendants.             )
22  ─────────────────────────────────────        )
23

24        **TO THE CLERK OF THE COURT:**

25        PLEASE TAKE NOTICE that on December 6, 2019, Defendants filed a Notice of

26  Removal with the United States District Court for the District of Arizona, thereby removing this

{00471649.1 }

1   action.  Pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal filed with the United

2   States District Court (without exhibits) is attached hereto as Exhibit A.

3

4          Respectfully submitted this 6th day of December, 2019.

5                                    COPPERSMITH BROCKELMAN PLC

6                                    By  /s/ D. Andrew Gaona

7                                        Kent Brockelman
                                         D. Andrew Gaona

8                                    Attorneys for Defendants

9

10  ORIGINAL efiled on December 6, 2019,
    and served via TurboCourt, upon:

11

12  Michael R. Pruitt
    Nathaniel J. Hill

13  Grant S. Cragun
    Jackson White

14  40 North Center Street, Suite 200
    Mesa, AZ  85201

15  mpruitt@jacksonwhitelaw.com

16  nhill@jacksonwhitelaw.com
    gcragun@jacksonwhitelaw.com

17  Attorneys for Plaintiffs

18

19  /s/ Sheri McAlister

20

21

22

23

24

25

26

Exhibit 7

# Exhibit 7


Select Language
Powered by Google Translate

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2019-097031 | Judge: | Palmer, David |
| File Date: | 10/7/2019 | Location: | Southeast |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Lerodrick Terry | Plaintiff | Male | Michael Pruitt |
| Aisha Terry | Plaintiff | Female | Michael Pruitt |
| Maricopa County Community College District | Defendant | | Pro Per |
| Leslie Cooper | Defendant | Female | Pro Per |
| Matthew Hasson | Defendant | Male | Pro Per |
| Casey Kuhn | Defendant | Female | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 11/8/2019 | WSS - Waiver Of Service Of Summons | 11/12/2019 | |

**NOTE:** Waiver of Service of Summons/ MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT; LESLIE COOPER; MATTHEW HASSON; CASEY KUHN (DEFENDANTS)

| | | | |
|---|---|---|---|
| 10/14/2019 | NOT - Notice | 10/16/2019 | |

**NOTE:** Notice of Lawsuit and Request for Waiver of Service of Summons

| | | | |
|---|---|---|---|
| 10/7/2019 | CSH - Coversheet | 10/9/2019 | |
| 10/7/2019 | COM - Complaint | 10/9/2019 | |
| 10/7/2019 | NJT - Not Demand For Jury Trials | 10/9/2019 | |
| 10/7/2019 | CCN - Cert Arbitration - Not Subject | 10/9/2019 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

Case 2:19-cv-05754-NVW   Document 1-3   Filed 12/06/19   Page 62 of 62