**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LeRodrick Terry, et al., | No. CV-19-05754-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa County Community College District, et al., | |
| Defendants. | |

Pending before the Court is Defendants Maricopa County Community College District, Leslie Cooper, John Doe Cooper, Matthew Hasson, and Casey Kuhn's (collectively, the "Defendants") Motion for Partial Summary Judgment (Doc. 48). LeRodrick Terry and Aisha Terry ("Dr. Terry" or "Plaintiffs") filed a Response (Doc. 52), and Defendants filed a Reply (Doc. 54).

**I.  Background**

Dr. Terry, in his capacity as Vice President of Student Affairs for Rio Salado College, was accused of sexual harassment. (Doc. 13 at ¶ 26). Defendants hired Ms. Wilcox, an outside investigator, to investigate these accusations. (Docs. 17 at ¶ 57; 49 at ¶ 3). Ms. Wilcox produced a report of her findings ("Investigation Report") in January 2018, which Defendants assert "substantiated 15 separate instances of inappropriate conduct towards women by Plaintiff in the performance of his duties." (Docs. 48 at 3; 49 at ¶ 5; 49-2 at 3). Dr. Terry appealed the findings in the Investigation Report. (Doc. 49-2 at 61–65). Defendants sent the Investigation Report's findings to outside counsel for review. (*Id.*)

Beginning in March 2018, Defendants started to receive public records requests from the media, many of which "specifically referenced Dr. Terry by name, the confidential investigation of Dr. Terry, and the confidential report prepared by Ms. Wilcox." (Docs. 17 at ¶ 32; 49 at ¶¶ 15–21; 49-2 at 42–53). Defendants sent various communications in response to media inquiries indicating the confidentiality of the investigation while in progress. (Doc. 49-2 at 42–53).

Meanwhile, on April 13, 2018, Dr. Terry and Defendants entered into a separation agreement and release. (Doc. 49-2 at 61–65). Among other things, this agreement released Dr. Terry's prior claims against Rio Salado College including his EEOC claim, provided that Dr. Terry would "withdraw his appeal of the findings in the Investigation Report," and stipulated that Dr. Terry's resignation would be effective June 30, 2018. (*Id.*)

Once finalized, Defendants released the Investigation Report to the media starting May 4, 2018. (Docs. 13 at ¶ 124; 49 at ¶ 22). Many media outlets subsequently published articles quoting from the Investigation Report. (Docs. 13 at ¶¶ 97–105; 49 at ¶¶ 23–27).

Plaintiffs allege that since the report's release, Dr. Terry has been unable to secure employment in "the educational field comparable to his former Vice President position with" Defendants after applying to over 200 jobs and not being selected. (Doc. 17 at ¶¶ 167–69). Plaintiffs assert Dr. Terry cannot find employment because Defendants released the Investigation Report to the media. (*Id.* at ¶ 169–70). Plaintiffs now bring suit against Defendants for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) rescission of contract; (4) violation of 42 U.S.C. § 1981; (5) violation of 42 U.S.C. § 1983; (6) defamation; (7) retaliation in violation of Title VII; and (8) loss of consortium. (*Id.* at ¶¶ 175–280).

Defendants now move for partial summary judgment, arguing that they were required to release the Investigation Report under Arizona's Public Records Law (the "PRL"). (Doc. 48).

**II.    Legal Standard**

As with a Rule 56(c) motion, partial summary judgment is generally appropriate

when the evidence, viewed "in the light most favorable to the non-moving party," shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987); Fed. R. Civ. P. 56(a). A fact is material if it affects the outcome of the case under prevailing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Discussion

The parties dispute whether the PRL required Defendants to disclose the Investigation Report. The public's right to public records is established in the PRL, which states that "[p]ublic records and other matters in the custody of any officer shall be open to inspection by any person at all times . . . ." A.R.S. § 39-121. To determine whether a document must be disclosed under the PRL, Courts apply a two-step process: (1) the court first evaluates the material to determine if it is indeed a "public record," and if so, then (2) whether "privacy, confidentiality, or the best interests of the state outweigh[ed]" the "strong presumption in favor of disclosure." *Griffis v. Pinal Cty.*, 156 P.3d 418, 422 (Ariz. 2007). The strong presumption in favor of disclosure aims to promote public access to records and to allow public monitoring of public officials' performance. *Carlson v. Pima Cty.*, 687 P.2d 1242, 1245–46 (Ariz. 1984); *see also* ARIZ. ATT'Y GEN. OP. I91-004.

#### 1. Whether the Investigation Report is a Public Record

To determine whether a document is a public record, courts conduct a "content-driven inquiry." *Griffis*, 156 P.3d at 421. Only "documents having a substantial nexus with a government agency's activities qualify as public records." *Id.* Generally, documents that are "reasonably necessary or appropriate to maintain an accurate knowledge of . . . official activities and of any . . . activities that are supported by monies from this state or any

political subdivision of this state," A.R.S. § 39-121.01(B), or that are "made or received . . . as evidence of functions, policies, decisions, procedures, operations or other activities," A.R.S. § 41-151.18, qualify as public records under the PRL.

Plaintiffs make several arguments as to why the Investigation Report cannot be considered a public record. First, Plaintiffs argue that Ms. Wilcox, the contractor who conducted the investigation, was a "private citizen," not a public officer whose work could be considered "public record." (Doc. 52 at 5–7). But this position lacks legal support. Public records may include "documentary materials . . . made or *received* by any governmental agency . . . in connection with the transaction of public business . . . ." A.R.S. § 39-121.01(B) (emphasis added).[1] Therefore, it is immaterial that Defendants hired Ms. Wilcox as an independent contractor because any documents she produced, and which Defendants received, during her investigation into sexual harassment allegations on behalf of Defendants would therefore be records "reasonably necessary" to carry out that function. A.R.S. § 39-121.01(B).

Next, Plaintiffs argue the Investigation Report is not a public record because Defendants provided it to the public before it was complete. (Doc. 52 at 8). Plaintiffs had earlier alleged that Defendants established policy was that "[p]ersonnel records that are works in progress or part of the deliberative process are not subject to release." (Doc. 17 at 9). Here, they offer support for this argument by quoting an email sent by Defendants' employees in response to media inquiries on March 14, 2018 that states: "[t]his is an ongoing matter that is not concluded . . . [t]here is no completed decision or investigation." (Doc. 49-2 at 79).

Defendants argue that the emailed statement was made on March 14, 2018, at a time when the investigation was ongoing; however, once Plaintiff entered into the separation agreement on April 13, 2018, this terminated the investigation review process rendering

---

[1] Additionally, in other matters when courts have sought to determine employee status for disclosure or privilege purposes, they have found that the consultant or independent contractor's function trumps title. *Ariz. Indep. Redistricting Comm'n v. Fields*, 75 P.3d 1088, 1098 (Ariz. Ct. App. 2003); *see also Gravel v. United States*, 408 U.S. 606, 621–23 (1972) (the court's inquiry centered on the employee's function for privilege purposes rather than the employee's job title).

- 4 -

the investigation complete. (Docs. 49-2 at 42, 65; 54 at 6). The separation agreement states that "the investigation was completed," but Dr. Terry's appeal of the investigator's findings resulted in an assignment of the appeal "to an outside attorney for review." (Doc. 49-2 at 61). A provision in the separation agreement stipulated that Dr. Terry "withdraws his appeal" and "this withdrawal makes further review . . . unnecessary" thus the outside attorney would conclude his review of the appeal and not issue a decision. (Doc. 49-2 at 62). The Court therefore finds that undisputed evidence shows the Investigation Report was no longer a work-in-progress when it was released on May 4, 2018 because the investigation had concluded, and no appeals remained pending after the separation agreement was executed on April 13, 2018. (Docs. 13 at ¶ 124; 49 at ¶ 22; 49-2 at 42, 65).

Additionally, even if the Investigation Report were incomplete, and Defendants violated their own policy by releasing an in-progress document, the PRL does not require that a document must be complete to be subject to disclosure. Plaintiffs cite a case that has since been vacated by the Arizona Supreme Court seeking to support their claim that there is an exception under the PRL for work-in-progress documents. (Doc. 52 at 8) (citing *Griffis v. Pinal Cty.*, 141 P.3d 780 (Ariz. Ct. App. 2006)). However, "[o]nce an opinion of the Court of Appeals has been vacated by [the Arizona Supreme Court], it is of no force and effect and is not authority." *Stroud v. Dorr-Oliver, Inc.*, 542 P.2d 1102, 1110 (Ariz. 1975). Other than this vacated opinion which has no force, and caselaw cited from outside Arizona, the Court cannot find, nor has it been presented with, legal authority definitively stating that work-in-progress documents are not subject to disclosure under the PRL. The PRL does not specify that the record must be complete. Records as defined in A.R.S. § 41-151 are included in the definition of "public records" which provide that records "means all books, papers . . . or other documentary materials, regardless of physical form or characteristics." A.R.S. § 41-151; § 121.01(B). The Court therefore finds that the Investigation Report was a public record regardless of its completion status.

Finally, Plaintiffs argue that the Investigation Report was not a disciplinary record and thus Defendants should not have disclosed it. (Doc. 52 at 9–10). But this argument also

lacks legal support. While the PRL provides that disciplinary records shall be maintained and open for inspection, it also stipulates that "this section does not . . . limit the duty . . . to make public records open to inspection." A.R.S. § 39-128. Just because a record is not a disciplinary record does not mean it cannot be released. In other words, a releasable public record, in this case the Investigation Report, need not be a disciplinary record. *See* A.R.S. § 41-151; § 121.01(B).

Having exhausted all of Plaintiffs' arguments to the contrary, the Court finds that the Investigation Report is a public record.

### 2. Whether Other Considerations Outweigh the Presumption Favoring Disclosure

Plaintiffs argue that even if the Investigation Report is a public record, Defendants should not have released it because Dr. Terry's confidentiality and privacy interests outweighed the public's interest in its release. (Doc. 52 at 10). While Arizona courts have recognized a privacy exception to the PRL, only information encompassing "the individual's control of information concerning his or her person" has consistently been found to outweigh the public's interest. *Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broad. Co.*, 955 P.2d 534, 539 (Ariz. 1998) (citing *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763–64 (1989) to aid in defining the meaning of a privacy interest under the Public Records Law). This is generally limited to information not freely available to the public such as an individual's social security number, or birth date. *Id.* (finding that birth dates and social security numbers are private information not subject to disclosure upon a Public Records Law request); *see also* ARIZ. ATT'Y GEN. OP. I91-004 (finding that home addresses and private telephone numbers are not subject to disclosure). Thus, for all other information not concerning "his or her person" there remains a "strong presumption in favor of disclosure." *Scottsdale Unified Sch. Dist.*, 955 P.2d at 539 (citing *United States DOJ*, 489 U.S. at 763–64 (1989)); *Griffis*, 156 P.3d at 422.

Defendants contend that because the Investigation Report "is not information related to Plaintiff's 'person'" but rather "concerns Plaintiff's substantiated conduct in his duties as a public official" there is no privacy interest. (Doc. 54 at 10) (emphasis in the

original). The Court agrees that Dr. Terry had no privacy interest because the sexual assault investigation concerned his alleged actions in his capacity as Vice President of Student Affairs rather than information pertaining to "his person." Plaintiffs' other privacy arguments citing federal law rather than Arizona law are unavailing because Arizona law clearly establishes a limited PRL privacy exception. (Doc. 52 at 13) (citing *Hunt v. F.B.I.*, 972 F.2d 286, 288 (9th Cir. 1992)); *see KPNX-TV v. Superior Court*, 905 P.2d 598, 601 (Ariz. Ct. App. 1995) (only when "there is no Arizona authority on point," may "analogous authority" be relied upon to interpret the PRL). Plaintiffs further argue that Dr. Terry retained a confidentiality interest in the Investigation Report because Defendants referred to the in-progress report as confidential. (Docs. 52 at 8; 49-2 at 42). The Court does not find this argument persuasive because the Plaintiffs rely on a quotation from an email Defendants sent on March 14, 2018 while the investigation was ongoing rather than concluded. (Doc. 49-2 at 42). At that time, the outside counsel was reviewing Dr. Terry's appeal, and therefore the report was "maintained in a confidential manner" per Defendants' policy. (Doc. 17 at ¶ 36).

Additionally, while Dr. Terry suggests that Defendants "[a]t the very least . . . could have redacted [his] name," before the Investigation Report was released to protect his confidentiality interest, the Court agrees with Defendants' assertion that redacting Dr. Terry's name would have made no difference. (Doc. 52 at 14; Doc. 54 at 11). According to Plaintiffs' own complaint, multiple "public records requests from the media . . . specifically referenced Dr. Terry by name, the confidential investigation of Dr. Terry, and the confidential report prepared by Ms. Wilcox." (Doc. 13 at ¶ 74). Thus, it would have made no difference whether the report was released with or without Dr. Terry's name. Although Plaintiffs cite an Attorney General Opinion stating that "[I]t is our opinion that investigative reports need not be released to the public upon request," that Opinion was written in the context of determining conflicts between the Arizona Public Record Statute and the Arizona Plan for the Security and Privacy of Criminal History Record Information. ARIZ. ATT'Y GEN. OP. I80-045. Thus, the Court finds that the investigations referred to by

the attorney general are *criminal* investigation matters and this statement does not necessarily pertain to the investigation and Investigation Report produced by Defendants.

Plaintiffs finally assert that Dr. Terry's privacy and confidentiality interests outweighed that of the public because the report was "flawed and biased." (Doc. 52 at 14). Whether the report is flawed and biased is not an issue properly before the Court. The matter here concerns whether the Investigation Report is a public record, and whether the public's interest in disclosure outweighed Plaintiffs' privacy and confidentiality interests. The Court notes that the Investigation Report found 15 separate instances of inappropriate conduct toward women, and it therefore demonstrates how Defendants respond to allegations of sexual harassment. (Doc. 49-2 at 7–32). Generally, the public's interest in disclosure regarding sexual assault allegations is greater than an individual's privacy interest. *Hickman v. Ryan*, 2009 WL 4730854, at *52 (D. Ariz. Aug. 28, 2009) (finding the public's interest to be greater than the individual's privacy interest because "the public ha[s] an interest in maintaining a sexual harassment-free . . . workplace").

Ultimately, the Court finds Plaintiffs have not overcome the "strong presumption in favor of disclosure." *Griffis*, 156 P.3d at 422.

**IV. Conclusion**

There is no genuine dispute of material fact that the PRL required Defendants to disclose the Investigation Report. Plaintiffs failed to establish that the report was not subject to the PRL, or that "privacy, confidentiality, or the best interests of the state outweigh[ed]" the "strong presumption in favor of disclosure." *Id.* Therefore, the Court must grant partial summary judgment in Defendants' favor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Partial Motion for Summary Judgment is **granted**.

Dated this 9th day of August, 2021.

Honorable Diane J. Humetewa
United States District Judge