**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LeRodrick Terry, et al., | No. CV-19-05754-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa County Community College District, et al., | |
| Defendants. | |

Pending before the Court are Defendant Maricopa County Community College District's (the "District") Motion for Summary Judgment (Doc. 96) and Defendants Leslie Cooper ("Ms. Cooper") and John Doe Cooper's Motion for Summary Judgment (Doc. 97). Also pending is Plaintiffs LeRodrick Terry's ("Dr. Terry") and his wife's Motion for Partial Summary Judgment (Doc. 98).[1] The motions are fully briefed. For the following reasons the Court grants Defendants' motions and denies Plaintiffs' Motion.

**I.   Background**[2]

In 2015, Dr. Terry was hired as Rio Salado College's Vice President of Student Affairs. (Docs. 96 at 4; 98 at 2). In 2017, upon receiving complaints against Dr. Terry alleging sexual harassment, the District hired an outside investigator, who finished an investigation report (the "Report") in January 2018. (Docs. 96 at 5; 98 at 3). The Report

---

[1] Dr. Terry requested oral argument. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the request for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Unless otherwise indicated, the facts in this background are undisputed.

found that many of the allegations of sexual harassment were "substantiated." (Doc. 96-1 at 49–79).

### a. The Agreement

On April 13, 2018, Dr. Terry and the District entered into a Separation Agreement and Mutual General Release (the "Agreement"). (Docs. 96 at 6; 98 at 4). The Agreement states that Dr. Terry denies "all forms of wrongdoing," that he will resign June 30, 2018, and that he "will not, in the future, apply for or accept employment with the District." (Doc. 96-1 at 85, 87). In return, he will withdraw his internal appeal of the Report's findings and his charge with the Equal Employment Opportunity Commission. (*Id.* at 86).

The Agreement releases the District and all its "current and past officers, directors, agents and employees" from legal liability, including "all legal liability for claims, costs and expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, arising out of or related to Dr. Terry's employment with the District." (*Id.*) The Agreement explicitly states that the release is intended "to be as broad as legally permissible to cover . . . claims relating in any way to the termination of Dr. Terry's employment" as well as "claims relating in any way to the Internal Charge, the investigation of the Internal Charge, or the Investigation Report . . . ." (*Id.*) The Agreement does not, however, waive Dr. Terry's "rights or claims that may arise out of acts, omissions or matters occurring after execution of the Agreement. (*Id.* at 88).

At the end, the Agreement states that the parties entered into the Agreement "as a matter of free will and has not been pressured or coerced in any way whatever into signing this Agreement." (*Id.*) It also states that "Dr. Terry understands that by executing this Agreement, he is not waiving rights or claims that may arise out of acts, omissions or matters occurring after execution of this Agreement." (*Id.*)

### b. Media Attention

In March 2018, various media outlets sent requests to the District for a copy of the Report. (Doc. 96 at 5). At first, the District declined to submit a copy of the Report because it was a pending and an "ongoing matter that is not concluded." (Doc. 96-1 at 82). On

March 15, 2018, counsel for the District forwarded an email to Dr. Terry's counsel noting the media requests and providing a copy of the District's responses, which include the denial of the request for the Report. (Doc. 96-1 at 81).

On May 4, 2018, after the Agreement was finalized, the District released a copy of the Report to the media, which in turn published several excerpts. (Docs. 96 at 6; 98 at 5). On May 11, 2018, counsel for Dr. Terry sent a letter to Defendants stating that the "District's omission of its plans to release the [Report] to the media upon the execution of the Separation Agreement and withdrawal of the EEOC charge was material and misleading in inducing Dr. Terry to sign and give up his rights." (Doc. 96-1 at 107). The letter states the Dr. Terry would be "rescinding his letter or resignation" and requests that the District find a position for him. (*Id.* at 109). On May 21, 2018, counsel for the District responded in writing and noted that Dr. Terry had been alerted to the media requests and that "the investigation into the allegations against Dr. Terry would not remain 'pending' forever; at some point, the investigation and decision making would not be 'ongoing,' and the District could not continue to decline production of the [Report] on the grounds of potential interference with such ongoing investigation or decision making." (*Id.* at 112). The District's letter also did not agree to change the Agreement by permitting Dr. Terry to rescind his resignation. (*Id.* at 113). By prior Order, this Court found that, as a public entity, Arizona's Public Records Law required Defendants to disclose the Report. (Doc. 91).

Dr. Terry says this release surprised him and violated his "expectations of confidentiality . . . ." (Doc. 98 at 5). Defendants argue that there was never a reasonable expectation of confidentiality. (Doc. 96 at 8). They note that before Dr. Terry entered into the Agreement, his counsel sought to include a provision whereby the District would agree to keep the Agreement and the "underlying investigation" confidential. (Doc. 96-1 at 93). Defendants represent that their counsel subsequently called Dr. Terry's counsel and said that Defendants "could not agree to any of the confidentiality requests because the District is a public entity." (*Id.* at 103).

### c. Remaining Claims

The parties have stipulated to the dismissal of all the Second Amended Complaint's ("SAC") claims except for Count V for a violation of 42 U.S.C. § 1983, Count VI for defamation, and Count VIII for loss of consortium. (Doc. 95). The § 1983 claim alleges that Defendants deprived Dr. Terry of constitutionally protected due process interests by releasing the Report. (Doc. 17 at ¶ 249). The defamation claim alleges Defendants' release of the Report constitutes defamation. (*Id.* at ¶ 265). And the loss of consortium claim alleges that Dr. Terry's wife, Aisha Terry, has also been injured as result of Defendants' actions. (*Id.* at ¶ 280). The claims are brought against both the District and its former general counsel, Ms. Cooper, who Dr. Terry argues was involved in the investigation and who reviewed the May 21 letter that declined to find Dr. Terry a position with the District after he resigned. (Doc. 98 at 6).

## II. Summary Judgment Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 585–86 (1986).  The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Both the District and Ms. Cooper have moved for summary judgment in their favor on all of the claims.  (Docs. 96; 97).  Dr. Terry has only moved for summary judgment in his favor for the § 1983 claim.  (Doc. 98).  The Court will proceed by addressing each of the claims in turn.

**III.   Count V – 42 U.S.C. § 1983**

Dr. Terry's § 1983 claim alleges that Defendants violated the Fourteenth Amendment when they refused to accept "Dr. Terry's recission of the Separation Agreement, the District" and deprived him of "a name clearing hearing . . . ." (Doc. 98 at 12). Defendants argue that Dr. Terry waived his right to a "name clearing hearing" and continued employment with the District through the Agreement. (Doc. 96 at 4).

Under the Fourteenth Amendment, states may not deprive individuals of their liberty interests or due process of law.  U.S. Const. amend. XIV § 1.  Liberty, in this context, has a "broad" meaning. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).  An individual's liberty interests include "the right of the individual to contract" and "to engage in any of the common occupations of life . . . ." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  Because of this occupational interest, a liberty interest is also at stake when, "in the course of dismissing an employee, the government takes steps or makes charges that so severely stigmatize the employee that she cannot avail herself of other employment opportunities . . . ." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992).  In those instances, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

To be sure, "the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment." *Paul v. Davis*, 424 U.S. 693, 706 (1976). Simply alleging that the government has stigmatized an individual is an insufficient claim because the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 701. Instead, under the so called "stigma plus" test, a plaintiff "must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the denial of 'some more tangible interest[ ] such as employment,' or the alteration of a right or status recognized by state law." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (quoting *Paul*, 424 U.S. at 701, 711).

Like all Constitutional rights, the right to notice and an opportunity to be heard may be waived. *Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981); s*ee also United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005) (stating that fundamental constitutional rights in general may be waived). But a waiver cannot be made in passing; it must be intentional, and courts "indulge every reasonable presumption against waiver of fundamental constitutional rights and do not presume acquiescence in the loss of fundamental rights." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005) (cleaned up).

Although the Agreement states Dr. Terry has waived certain rights, Dr. Terry himself makes two arguments why he has not waived his due process rights. The first is that the Agreement's waiver of rights is invalid because he did not know that the Report might be released to the media. (Doc. 103 at 3). The second is that he did not waive the due process rights at issue because the claim arose after the Agreement. (*Id*. at 4). The Court rejects both.

### a. Waiver

The Agreement states that the parties are entering it "as a matter of free will," and it advises Dr. Terry "to consult with an attorney prior to executing" and gives him the

ability "to consider this Agreement for twenty-one (21) calendar days, and that he may take, and has taken, as much of that time as he wants in order to consider this Agreement before signing it." (Doc. 96-1 at 88). Significantly, the Agreement's confidentiality provision applies to Dr. Terry, but not to any of Defendants. (*Id.* at 87).

No party disputes that Dr. Terry's counsel asked the District whether it would be possible to include a provision in the Agreement that would require the District to keep its terms confidential and to keep "the underlying investigation" confidential. (Doc. 103 at 3). Dr. Terry himself states that he had asked his counsel to do so because he was "concerned with the [Report] and how it painted" him in the event it became "a public document." (Doc. 96-1 at 27–28). And no party disputes the District's assertion that it told Dr. Terry's counsel that the District "could not agree to any of the confidentiality requests because the District is a public entity." (*Id.* at 103). Finally, no party disputes that the Agreement does not waive Dr. Terry's "rights or claims that may arise out of acts, omissions or matters occurring after execution of this Agreement." (*Id.* at 88).

Despite this evidence, Dr. Terry argues he did not knowingly enter into the Agreement, and he supports this argument by citing his own deposition testimony where he states that he understood to Agreement would allow him to "move on" with his career because the Report would not be made public. (Doc. 103-1 at 8). He also cites deposition testimony from his counsel, who asked the District whether it would be possible to include a provision in the Agreement that would require the District to keep its terms confidential and to keep "the underlying investigation" confidential. (Doc. 103 at 3). Dr. Terry's counsel represents that when he requested to keep the "underlying investigation" confidential, he did not intend to include the Report and so he was never told that the Report could be publicized. (Doc. 103-1 at 39).

The evidence that Dr. Terry's argument relies upon consists entirely of self-serving and unsubstantiated depositions of Dr. Terry and his counsel. The Court need not find a "'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)

(quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996)). A plain reading of the Agreement shows the District was not bound by a confidentiality requirement. Likewise, no party disputes that the District told Dr. Terry's counsel that it could not be bound by "any" confidentiality agreement. (Doc. 96-1 at 103). The Court finds there is no genuine dispute of fact as to whether Dr. Terry knew that the Agreement did not impose a confidentiality requirement on the District. There is no genuine dispute that the Agreement was knowingly and voluntarily entered and, therefore, a valid waiver.

### b. Timing

Next, Dr. Terry argues he has not waived his right to a name clearing hearing because the Report's publication and the refusal to rehire him occurred after the Agreement was entered, and the Agreement preserved any "rights or claims that may arise out of acts, omissions or matters occurring after the execution of this Agreement." (Doc. 96-1 at 88). The Court rejects this argument and finds that the wavier applies to due process claims resulting from the Report's publication.

The Court concludes that the Report was published, at the latest, at the same time the Agreement was made. In *Cox v. Roskelley*, the Ninth Circuit was presented with the question of exactly when publication of stigmatizing information occurs in the context of a termination due process claim. 359 F.3d 1105, 1110 (9th Cir. 2004). The court found publication occurs when stigmatizing information is placed in an employee's personnel file because, at that point, the governing state law mandated "release upon request." *Id.* at 1112. Stated differently, the government publishes stigmatizing information "when the governing state law classifies" the information as subject to public release upon request. *Id.*

Under Arizona's Public Records Law (the "PRL"), "[p]ublic records and other matters in the custody of any officer shall be open to inspection by any person at all times . . . ." A.R.S. § 39-121. Under *Cox*, the Report became a public record, at the latest, the moment the Agreement was made because, as the Agreement states, the Report "was

completed." (Doc. 96-1 at 85).[3]

Dr. Terry argues that the Report was published on May 4, 2018, when the District "classified the . . . Report as then becoming subject to the public record request." (Doc. 107 at 4). But the rule established in *Cox* says that publication occurs "when governing *state law* classifies" a document as a public record. 359 F.3d 1105, 1112. It does not say, as Dr. Terry suggests, that publication occurs when a state agency determines that a document is a public record. The determinative factor is the law itself, not what Defendants' actions imply the law to be. *See id.* So, the Court must reject Dr. Terry's argument that the Report was published after the Agreement.

Because the Report was not published after the Agreement, it cannot serve as a basis for Dr. Terry's due process claim because he has waived "all legal liability for claims, costs and expenses, damages, actions and causes of action of whatever kind or nature, whether known or unknown, arising out of or related to Dr. Terry's employment with the District." (Doc. 96-1 at 86); *see also Correa*, 645 F.2d at 817 (9th Cir. 1981) ("[W]here adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing.").

As for the District's refusal to rescind Dr. Terry's resignation as the only basis for a due process claim, the Court finds Dr. Terry waived his right to seek employment with the district in the Agreement. (Doc. 96-1 at 87). In addition, the decision to not rehire an individual, standing alone, is insufficient to state that a liberty interest has been deprived. *See Bd. of Regents*, 408 U.S. at 575.

In sum, the Court will enter summary judgment in Defendants' favor because Dr. Terry waived his due process claim when he entered into the Agreement.

**IV.   Count VI – Defamation**

---

[3] There is also some reason to believe that the Report was subject to release upon request before the Agreement was made. The so-called work-in-progress exemption, that the District used to prevent the Report's publication before the Agreement, is only discussed in one Arizona Court of Appeals decision, which has since been vacated. *Griffis v. Pinal Cnty.*, 141 P.3d 780, 782 (Ariz. Ct. App. 2006), vacated, 156 P.3d 418 (Ariz. 2007). The Court's prior Order cast doubt on whether the PRL itself actually forbids the publication of work-in-progress, and so it is possible that the Report was subject to release upon request before the Agreement. (*See* Doc. 91 at 5).

The Court turns to the defamation claim, which generally requires a plaintiff to show a defendant made a defamatory statement to a third party despite knowing its falsity or negligently failing ascertain the truth. *Farrell v. Hitchin' Post Trailer Ranch*, 2011 WL 6057930, at *2 (Ariz. Ct. App. Dec. 6, 2011). When a plaintiff is a public official, however, he must show that the defamatory statement was made "with 'actual malice'—that is, knowledge that it was false or with reckless disregard of whether it was false or not." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). The Court has emphasized "that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Instead, there "must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Dr. Terry does not contest that he is a public official and must demonstrate actual malice. (Doc. 103 at 14) (discussing the defamation standard of actual malice for public officials). As evidence of actual malice, Dr. Terry claims that the Report itself is "overtly slanted against Dr. Terry and has a notable biased tone." (Doc. 103 at 15). He quotes from the Report's first page which states that Dr. Terry's claims "that he is being discriminated against and targeted with retaliatory action based on his [redacted] race and male gender are beyond the scope of this investigation." (Doc. 96-1 at 49). He also cites the deposition testimony of Lacoya Shelton-Johnson, who was the District's Vice Chancellor of Human Resources. (Doc. 103 at 15–16). Ms. Shelton-Johnson testified that "it was common knowledge that black executives at Maricopa were treated far more harshly than their nonblack counterparts" but that in the particular case of Dr. Terry she "didn't know one way or another because I wasn't involved." (Doc. 103-1 at 65). She also expressed concern that without investigating allegations of racial bias, the Report would lack "completeness." (*Id.* at 69).

Dr. Terry's evidence establishes, at most, the possibility that the Report was biased. But a showing of bias does not show that a Defendant entertained serious doubts about the

truth of its publication. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Critically, nothing in the record shows that the statements made in the Report were known to be false or that Defendants had serious doubts as to the statements' truth. Because Dr. Terry's evidence does not speak to the question of what Defendants knew with respect to the statements made in the Report, he has failed to make any showing of actual malice. The Court will enter summary judgment in Defendants' favor for the defamation claim.

**V.     Count VIII – Loss of Consortium**

As Dr. Terry's defamation claim fails, his wife's derivative claim for loss of consortium must also fail. *See Barnes v. Outlaw*, 964 P.2d 484, 487 (Ariz. 1998) (holding that "all elements of the underlying cause must be proven before the [loss of consortium] claim can exist."). The Court will enter summary judgment in Defendants' favor for the loss of consortium claim.

**VI.    Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Maricopa County Community College District's Motion for Summary Judgment (Doc. 96) and Defendants Leslie Cooper and John Doe Cooper's Motion for Summary Judgment (Doc. 97) are **granted**.

**IT IS FURTHER ORDERED** that Plaintiff LeRodrick Terry's Motion for Partial Summary Judgment (Doc. 98) is **denied**.

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants for Count V, violation of 42 U.S.C. § 1983; Count VI, defamation; and Count VIII, loss of consortium. As there are no other remaining claims, the Clerk of Court shall terminate this matter.

Dated this 6th day of September, 2022.

Honorable Diane J. Humetewa
United States District Judge